IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| D.G. by Next Friend G. Gail Stricklin, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 08-CV-074-GKF-FHM |
| C. BRAD HENRY, in his official capacity as ) | |
| Governor of the State of Oklahoma, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **O P I N I O N   A N D   O R D E R**

This matter comes before the court on defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. [Doc. No. 77]. On January 7, 2009, the court denied the motion with respect to all causes of action except plaintiffs' third and fifth causes of action. The court took the motion under advisement with respect to these causes of action. For the reasons set forth below, defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is granted with respect to plaintiffs' third and fifth causes of action.

Plaintiffs' third cause of action is a Section 1983 claim arising from alleged violations of the federal Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), 42 U.S.C. §621 *et seq.* Plaintiffs' fifth cause of action is a common law claim for breach of alleged third party beneficiary rights arising from the AACWA.

### **Plaintiffs' Third Cause of Action–Violations of AACWA**

In their third cause of action, plaintiffs allege the policies and practices of the defendants have deprived them of rights conferred by AACWA and regulations promulgated thereunder. Specifically, they allege:

1.  Plaintiffs are entitled to timely written case plans containing mandated elements and to a case review system to ensure implementation of those plans. [*citing* 42 U.S.C. §§622(b)(8)(A)(ii); 671(a)(16); 675(1) and 675(5)(A)].

2.  Plaintiffs have a right to have a petition to terminate parental rights filed or have compelling reasons document why such petition has not been filed, in accordance with specified statutory standards and time frames. [*citing* 42 U.S.C. §§622(b)(8)(A)(ii); 671(a)(16); 675(5)(E); 675 note; and 45 C.F.R. §1356.21(i)].

3.  Plaintiff children whose permanency goal is adoption have an enforceable right to planning and services to obtain a permanent placement including documentation of steps taken to secure permanency. [*citing* 42 U.S.C. §§622(b)(8)(A)(ii); 622(b)(8)(A)(iii)(II); 671(a)(16); 675(1)(E); 675(5)].

4.  Plaintiff children have an enforceable right to services that protect their safety and health. [*citing* 42 U.S.C. §§622(b)(15); 671(a)(22); 675(1)(B); 45 C.F.R. §1357.10(c)(5)].

5.  Plaintiff children have an enforceable right to have health and educational records reviewed, updated and supplied to foster parents or foster care providers with whom they are placed, at the time of the placement. [*citing* 42 U.S.C. §§622(b)(8)(A)(ii); 671(a)(16); 675(1)(C); 675(5)(D)].

6.  Plaintiff children have an enforceable right to live in foster placements that have the capacity to provide for their essential needs and services by receiving adequate foster care maintenance payments that cover the actual cost of (and the cost of providing) plaintiff children's food, clothing, shelter, daily supervision, school supplies, reasonable travel to visitation with family and other expenses. [*citing* 42 U.S.C. §§671(a)(1), 671(a)(11), 671(a)(22), 672(a)-(c); 675(4)(A) and 45 C.F.R. §§1355.20(a), 1356.21(m)(1)].

### A.  Requirements for Finding a Statute Creates a Private Cause of Action

Section 1983 imposes liability upon anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To seek redress through Section 1983, a plaintiff must assert a violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone,* 520 U.S. 329, 340 (1997). In *Blessing,* the Supreme Court set forth three criteria necessary to finding that a statutory provision gives rise to a federal right: (1) Congress must have intended that the provision in question benefit the

plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States. *Id.* at 340-41. *See also, Mandy R. v. Owens,* 464 F.3d 1139, 1146-47 (10th Cir. 2006).

In *Gonzaga University v. Doe,* 536 U.S. 273, 283-84 (2002), the Supreme Court tightened the first requirement, holding that an enforceable private right exists only if the statute contains nothing "short of an unambiguously conferred right" and not merely a vague benefit or interest. The court in *Gonzaga* emphasized that in cases brought to enforce legislation enacted pursuant to the spending power of Congress, Congress must "speak with a clear voice" and manifest an "unambiguous" intent to confer individual rights before federal funding provisions will be read to provide a basis for private enforcement. *Id.* at 280. "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Id.,* citing *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28 (1981).

The court in *Gonzaga* held that the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. 1232g, did not create a private right of action under §1983. In FERPA, Congress explicitly directed the Secretary of Education to withhold federal funding from states with a policy or practice of permitting the unauthorized release of education records or personal information. 20 U.S.C. §1232g(b)(1). 536 U.S. at 287. The court contrasted this with the language of Titles VI of the Civil Rights Act of 1964 ("no person...shall...be subjected to discrimination under any program or activity receiving Federal Financial Assistance") and Title

3

IX of the Education Amendments of 1972 ("No person...shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance"), both of which create enforceable private rights. *Id.* at 284, n. 3. "Unlike the individually focused terminology of Titles VI and IX...FERPA's provision speak only to the Secretary of Education...This focus is two steps removed from the interests of individual students and parents and clearly does not confer the sort of "*individual* entitlement" that is enforceable under §1983." *Id.* (citations omitted).

The court in *Gonzaga* also noted that FERPA's nondisclosure provisions "speak only in terms of institutional policy and practice, not individual instances of disclosure...they have an "aggregate" focus...they are not concerned with whether the needs of any particular person have been satisfied, and they cannot give rise to individual rights." *Id.* at 288 (citations omitted). Finally, the court held that the mechanism Congress chose to provide for enforcing those provisions buttressed its conclusion that FERPA's nondisclosure provisions fail to confer a private right of action: "Congress expressly authorized the Secretary of Education to '*deal with violations*' of the Act...and required the Secretary to 'establish or designate [a] review board' for investigating and adjudicating such violations." *Id.* at 289.

After *Gonzaga,* the Tenth Circuit has applied the more stringent test to determine that the "sufficient payments" section of the Medicaid Act [42 U.S.C. §1396a(a)(30)(A)] does not create an enforceable private right of action, *Mandy R.,* 464 F.2d at 1147, and that a federal statute limiting illegal aliens' eligibility for higher education benefits [8 U.S.C. §1623] does not create a private right of action. *Day v. Bond,* 500 F.3d 1127, 1139 (10th Cir. 2007).

Post-*Gonzaga,* the Tenth Circuit has not addressed whether any provisions of the

4

AACWA create a private right of action.[1]  However, in *31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir. 2003), the Eleventh Circuit found that §§675(5)(D) and (E) of the AACWA–two of the provisions plaintiffs in this case rely upon–do *not* confer a private right of action enforceable under 42 U.S.C. §1983.  The court noted that the AACWA–like FERPA in the *Gonzaga* case–is a federal funding statute.  *Id.* at 1270.  For a state to receive funds, it must satisfy certain requirements, including submission of a State Plan for foster care and adoption assistance.  *Id.* citing 42 U.S.C. §671(a).   If a state follows its approved plan, it receives federal funds.  *Id.* citing 42 U.S.C. §670; 42 U.S.C. §1320a-2a.  If a state fails to follow its approved plan, it may lose all or some of the federal funds it otherwise would receive.  *Id.*  The Secretary is required to promulgate regulations for use in reviewing state programs in order to determine whether they are in substantial conformity with the state plan.  *Id.*  The regulation must require the Secretary to withhold federal funds if a state has failed to substantially conform to its approved plan, and the regulations do exactly that.  *Id.,* citing 42 U.S.C. §1320a-2a(b)(3), 45 C.F.R. §§1355.35(c)(4), 1355.36(b).

Citing *Gonzaga,* the court in *31 Foster Children* pointed out that §675(5)(D) and (E) are definitional in nature and there cannot, alone, supply a basis for conferring rights enforceable under §1983.  *Id.* at 1271.  The court noted that other than the definition of "case review system," the only provision in Part E of Title IV that uses the term is 42 U.S.C.

---

[1] Pre-*Gonzaga,* , in *Yvonne L. v. New Mexico Department of Human Services,* 959 F.2d 883, 889 (10th Cir. 1992), the Tenth Circuit held "that individual causes of action [under AACWA] may be appropriate, depending upon the particular section or violation involved." However, the court concluded plaintiffs' contentions that defendants had failed to comply with 42 U.S.C. §671(a)(1) and the alleged facts supporting those contentions were insufficient to defeat summary judgment on their claim.  *Id.*

5

§671(a)(16)–another provision relied upon by plaintiffs in this case. That section conditions receipt of federal funds on implementation of a State Plan that, among other things, provides for "a case review system which meets the requirements of section 675(5)(B)...with respect to each such child." However, the court pointed out, §671(a)(16) does *not* condition receipt of federal funds on compliance with either §675(5)(D) or (E). "The conclusion we reach is that Congress knew how to require compliance with all aspects of a case review system, as described in §676(5), when it wanted to do so. It did not choose to do so in §671(a)(16)." *Id.* at 1271-72.

The court in *31 Foster Children* also concluded §§675(5)(D) and (E) "do not have the kind of focused-on-the individual, rights-creating language required by *Gonzaga*. Instead, the language of those provisions gives them an aggregate or system wide focus instead of one that indicates concern with whether the needs of any particular child are met." *Id.* at 1272.

### B. Analysis

As noted by the court in *31 Foster Children,* the AACWA, 42 U.S.C. §§621 *et seq.,* is a federal funding statute that establishes a program of payments to states for foster care and adoption assistance. The typical remedy for state noncompliance with such a statute is not a private cause of action for noncompliance but rather action by the federal government to terminate funds to the state. *Gonzaga,* 536 U.S. at 280. The AACWA, in fact, directs the Secretary to promulgate regulations for the review of state operations to determine whether they are in "substantial conformity" with State Plans and to withhold federal funds if they are not. 42 U.S.C. §1320a-2a. Therefore, as instructed in *Gonzaga,* Congress must "speak with a clear voice" and manifest an "unambiguous" intent to confer individual rights before federal funding provisions will be read to provide a basis for private enforcement. 536 U.S. at 280.

Plaintiffs urge the court to conclude, based on repeated us of the words "child" and "children," that the AACWA creates a private right of action for foster children. However, applying the inquiry mandated by *Gonzaga,* the court must conclude otherwise. The court has reviewed every provision of the AACWA relied upon by plaintiffs.[2] None convince the court that Congress has "with a clear voice" manifested an unambiguous intent to confer individual rights. Certainly the provisions are unlike Title VI of the Civil Rights Act of 1964 or Title IX of the Education Amendments of 1972. Rather, the provisions of the AACWA impose on states requirements that are institutional and aggregate in nature.[3]

### 1. Right to Timely Written Case Plans Containing Mandated Elements and to a Case Review System to Ensure Implementation of those Plans.

The AACWA requires State Plans to include a case review system for the review of each foster child [42 U.S.C. §622(b)(8)(A) (ii)] that meets specific requirements [42 U.S.C. §675(5)(A)] and to provide for development of a case plan for each child [42 U.S.C. §671(a)(16)] which contains specific required elements [42 U.S.C. §675(1)]. Plaintiffs argue these statutes therefore confer a privately enforceable right to timely written case plans containing mandated elements. However, a review of these statutes fails to convince the court that Congress has "with a clear voice" manifested an unambiguous intent to confer individual

---

[2]Plaintiffs also rely upon regulations enacted pursuant to the AACWA. The regulations–being outside the scope of the text of the statutes themselves–do not aid the court in determining whether Congress intended, in passing the legislation, to confer a private right of action. Nevertheless, the court has reviewed the regulations and finds that they contain no "rights creating" language required by *Gonzaga.*

[3]Plaintiffs rely on 42 U.S.C. §675 and/or its subsections for every right asserted under AACWA. As noted by the court in *31 Foster Children,* §675 is definitional in nature and therefore cannot supply a basis for conferring rights under §1983. 329 F.3d at 1271 (citing *Gonzaga,* 536 U.S. at 280 and *Charlie H. v. Whitman,* 83 F.Supp.2d 476, 490 (D.N.J. 2000).

rights. Certainly, none of these provisions are like Title VI of the Civil Rights Act of 1964 or Title IX of the Education Amendments of 1972. Rather, these provisions impose upon states the requirement to adopt State Plans that have specific elements. Thus, the court believes these provisions are institutional and aggregate in nature.

### 2. Right to Have a Petition to Terminate Parental Rights Filed or Have Compelling Reasons Document Why Such Petition has not been Filed, in Accordance with Specified Statutory Standards and Time Frames

The case review systems of the State Plans [42 U.S.C. §622(b)(8)(A)(ii)] must have a procedure assuring that, in the case of a child who has been in foster care for 15 of the most recent 22 months or has been found by a court of competent jurisdiction to be an abandoned infant, or whose parent has committed murder or voluntary manslaughter of or felony assault upon another child of the parent, or the other parent, the state will file a petition to terminate the parental rights of the child's parents and concurrently to identify, process, and approve a qualified family for an adoption or document reasons why the filing of a petition would be in the best interest of the child. [42 U.S.C. §675(5)(E)]. The procedure for determining when a petition to terminate parental rights must be filed is set forth in 5 C.F.R. §1356.21(i).

Section 675(5)(E), much like §§675(1) and 675(5)(A), does not manifest an unambiguous intent to confer individual rights. Rather, it is part of a listing of specific elements the State Plans are required to cover. The court finds that AACWA does not create an individual right to sue under §1983 for a state's failure to comply with this provision.

### 3. Right of Plaintiff Children Whose Permanency Goal is Adoption to Planning and Services to Obtain Permanent Placement

The AACWA requires State Plans to provide for a service program designed to help

8

children either to be returned to families from which they have been removed, where safe and appropriate, or placed for adoption, with a legal guardian or other permanent living arrangement. [42 U.S.C. §§622(b)(8)(A)(iii)(I) and (II)]. A case plan must be developed for each child. [42 U.S.C. §§671(a)(16) and 675(5)]. The case plan for children with respect to whom the permanency program is determined to be adoption or placement in another permanent home must include documentation of the steps the agency is taking to adopt or place the child. [42 U.S.C. §675(1)(E)].

Once again, these statutes deal with the requirements of the State Plans. The State Plans must have a service program which, among other things, helps with adoption or other permanent placement of children, and the case plans have to document efforts to achieve this goal. However, there is no language that manifests unambiguous intent to confer a private right of action.

### 4. Right to Services that Protect Safety and Health

The AACWA requires that State Plans describe how the state "actively consults with and involves physicians and other appropriate medical professionals" in assessing the health and well-being of foster children and determining appropriate medical treatment for them. [42 U.S.C. §622(b)(15)]. The case plan developed for each child [42 U.S.C. §671(a)(22)] must include "a plan for assuring that the child receives safe and proper care" and addressing the needs of the child in foster care. [42 U.S.C. §675(1)(B)]. Federal regulations also state that one purpose of child welfare services is to assure adequate care of children away from their homes where the child cannot be returned home or cannot be place for adoption. 45 C.F.R. §1357.10(c)(5).

These provisions set out yet another requirement of the State Plans and describe another

required element of the case plans for foster children. There is no clear, unambiguous expression of Congressional intent to confer individual rights.

### 5. Right to Have Health and Education Records Reviewed, Updated and Supplied to Foster Parents or Foster Providers

The AACWA requires that State Plans have case review systems [42 U.S.C. §622(b)(8)(A)(ii)] and case plans for each child [42 U.S.C. §671(a)(16)] that contain the health and education records of the child [42 U.S.C. §675(1)(C)] and the case review system must assure that the health and education records are supplied to the foster parent or foster care provider at the time of each placement. [42 U.S.C. §675(5)(D)].

This clearly does not confer any private right of action to plaintiff children.[4] Rather, it is but another requirement of State Plans.

### 6. Right to Live in Foster Placements That Have the Capacity to Provide for Essential Needs and Services by Receiving Adequate Foster Care Maintenance Payments

The AACWA requires that State Plans provide for foster care maintenance payments in accordance with §672 of the act and for adoption assistance in accordance with §673 of the act [42 U.S.C. §671(a)(1)]. The State Plans must provide for periodic review of the amounts paid as foster care maintenance payments and adoption assistance to assure their continuing appropriateness. [42 U.S.C. §671(a)(11)]. The State Plans must also provide for granting an opportunity for a fair hearing before the state agency to any individual whose claim for benefits available pursuant to the statute is denied or not acted upon with reasonable promptness. [42

---

[4] Section 675(5)(D) also provides that the health and education records are to be supplied to the child at the time the child leaves foster care by reason of having reached the age of majority. This is the only statutory language in the AACWA the court is aware of that appears to confer a direct right to foster children. Plaintiffs, all of whom are minors, have not asserted any such right.

U.S.C. §671(a)(12)]. Section 672 sets out the requirements for states' foster care maintenance payments programs. [42 U.S.C. §672]. The term "foster care maintenance payments" is defined to cover the cost of food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance and reasonable travel to the child's home for visitation. [42 U.S.C. §675(4)(A)]. In the case of institutional care, the term includes the reasonable costs of administration and operation of the institution as are necessarily required to provide these items. [*Id.*]. Definitions of "foster care maintenance payments," "foster family care," and "child care institutions" are set forth in 45 C.F.R. §1355.20(a). Regulations also require periodic reviews by the states of the appropriateness of foster care maintenance payments. [45 C.F.R. §1356.21(m)(1)].

However, nowhere in the provisions cited by plaintiff is there language suggesting a clear Congressional intent to confer a private right of action on foster children. Instead the statutes once again set out the requirements of state plans and state foster care maintenance payment programs.

### C. Conclusion Regarding Creation of Private Rights

Plaintiffs cannot meet the first prong of the analysis set forth in *Blessing* as modified by *Gonzaga.* None of the statutory provisions of AACWA cited by plaintiffs indicates Congress has spoken clearly to manifest an intent to confer rights on individual plaintiffs under §1983.[5] *Mandy,* 464 F.3d at 1148. Therefore, analysis of the remaining two prongs of the private right of

---

[5]The court has also reviewed the following provisions cited by plaintiffs in ¶246 of their complaint as supporting their third cause of action, but not cited in plaintiffs' brief in opposition to defendants' motion to dismiss: 42 U.S.C. §§629a(a)(1)(A)(i)-(ii), 629a(a)(7)-(8); 45 C.F.R. §1355.25; 45 C.F.R. §1356.21(f)-(g); 45 C.F.R. §1357.10(c)(4) and (6). None of these provisions contains language creating individual rights.

action test is unnecessary.

Defendants are entitled to dismissal of plaintiffs' third cause of action.

### Plaintiffs' Fifth Cause of Action–Third Party Beneficiary Rights Under AACWA

Plaintiffs, in their Fifth Cause of Action, characterize the State Plans between the federal government and states as "contracts" and contend that they are third party beneficiaries of the "contracts." Defendants, in their motion to dismiss, challenge the characterization of the State Plans as "contracts," and deny plaintiffs are third party beneficiaries of the State Plans.

The parties dispute whether state common law or federal common law governs the issue of third party beneficiary rights, with defendants taking the position that the former controls and plaintiffs alleging the latter controls. The court concludes federal common law should be applied because plaintiffs' claim arises from a federal statute. *See D'Amato v. Wisconsin,* 760 F.2d 1474, 1479 (7th Cir. 1985).

However, whether state common law or federal common law governs, the third party beneficiary issue is inextricably linked with the question of whether the AACWA creates a private right of action. In *Hodges v. Atchison, Topeka and Santa Fe Railway Company,* 728 F.2d 414 (10th Cir. 1984), the court considered claims by a discharged railroad employee that the Rehabilitation Act of 1973 conferred a private right of action and that he was a third party beneficiary under act. The court, after analyzing the language of the statute, concluded no private right of action was created by it. *Id.* at 416. Having concluded no private right of action existed, the court held that the third party beneficiary claim was "but another aspect of the implied right of action argument," and denied the claim. *Id.*

Similarly, in this case the viability of the third party beneficiary claim depends on a finding that the AACWA confers upon plaintiffs some private right of action. The court has concluded it does not. As in *Hodges,* the third party beneficiary claim is but another aspect of the implied right of action, and must fall with that claim.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss [Doc. No. 77] is granted in part. Plaintiffs' third and fifth causes of action are hereby dismissed. The motion is denied with respect to plaintiffs' remaining causes of action.

ENTERED this 19th day of January, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma