## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

D.G., by Next Friend G. Gail Stricklin, *et al.*,  )
for themselves and those similarly situated,  )
                                    )
                     **Plaintiffs,**  )
v.  )                   **Class Action**
                                      )     **Case No. 08-CV-074-GKF-FHM**
C. BRAD HENRY, in his official capacity as  )
Governor of the State of Oklahoma, *et al.*,  )
                                      )
                  **Defendants.**  )

## PLAINTIFF CHILDREN'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

### Preliminary Statement

Pursuant to the Order entered by this Court on February 18, 2009 [Dkt. No. 246], Plaintiff Children hereby submit the following brief in further support of their motion for class certification [Dkt. No. 4].

The Court's February 18, 2009 Order directs the parties to submit simultaneous briefs addressing the following issues: (1) with respect to each proposed remedy set forth in Plaintiff Children's Statement of Relief Sought (hereafter, the "Statement of Relief") [Dkt. No. 241], whether a class action seeking that particular type of injunctive relief would be appropriate under the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2), and Fed. R. Civ. P. 65(d); and (2) the permissibility of certifying a class action with respect to some, but not all, of the proposed remedies.

As alleged in the Complaint, DHS's agency-wide practices and deficiencies are harming the State's foster children in numerous ways. Plaintiff Children are being abused and neglected in alarming numbers while in DHS custody, housed in dangerous emergency shelters and other placements, moved from placement to placement at an

exceptionally high rate, deprived of permanent homes, and subjected to poor monitoring practices that add to the dangers they already face. These harms are the predictable result of a child welfare agency that overburdens its workers with excessive caseloads, fails to properly train them for what they will encounter, and fails to develop a sufficient number and array of placements for the children under its care. The remedies proposed by Plaintiff Children are aimed at addressing these deficiencies.

As discussed below, each of these proposed remedies meets the threshold tests formulated by the Tenth Circuit at the class certification stage. Accordingly, class certification should be granted. Moreover, it would be premature for the Court to exclude any particular remedies at this early stage of the case; any such decision should be tailored to the facts proven at trial following system-wide merits discovery.

### Argument

**I.      Each Of The Remedies Proposed In The Statement Of Relief Constitutes Appropriate Class-Wide Relief**

**A.      The Tenth Circuit's Recent Decisions in *Shook II* and *Vallario***

The Court's focus on Rules 23(b)(2) and 65(d) is appropriate, given the Tenth Circuit's recent decisions in *Shook v. Board of County Commissioners*, 543 F.3d 597 (10th Cir. 2008) ("*Shook II*"), and *Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir. 2009) ("*Vallario*").

In *Shook II*, a decision issued after briefing on plaintiffs' class certification motion was completed, the Tenth Circuit held that Rule 23(b)(2) "imposes two independent but related requirements." *Id.*, 543 F.3d at 604. First, "the defendants' actions or inactions must be based on grounds generally applicable to all class members." *Id.* Second, "final injunctive relief [must] be appropriate *for the class as a whole*." *Id.*

2

(emphasis in original). Put otherwise, Rule 23(b)(2) "demands a certain cohesiveness among class members with respect to their injuries . . . ." *Id.*

According to *Shook II*, this cohesiveness likewise has "two aspects." *Id.* First, "the class must be sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of [Fed. R. Civ. P.] 65(d) – namely, the requirement that it 'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'" *Id.* (quoting Fed. R. Civ. P. 65(d)(1)). The Tenth Circuit made clear, however, that at the class certification stage, the injunctive relief sought need only be described in such detail "that the court can at least 'conceive of an injunction that would satisfy [Rule 65(d)'s] requirements.'" *Id.* at 605 (quoting Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004)).[1] Second, cohesiveness under Rule 23(b)(2) requires that the class members' injuries "be sufficiently similar that they can be addressed" in a "single injunction that need not differentiate between class members." *Shook II*, 543 F.3d at 604; *see also Vallario*, 554 F.3d 1259, at 1268. If "redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members," class certification may not be warranted. *Id.*[2]

---

[1] Just last month, the Tenth Circuit confirmed this "conceivability" standard in *Vallario*, when it held that "a motion for class certification must describe the equitable relief sought in sufficient detail that the district court can conceive of an injunction that comports with the requirements of Rule 23(b)(2) and 65(d)." *Id.*, 554 F.3d 1259, at 1267-1268 (emphasis added).

[2] Notably, in *Shook II*, the Tenth Circuit affirmed the District Court's denial of class certification in part because much of the relief sought by the plaintiffs would have required the district court to craft an injunction that distinguished among class members based on their individual characteristics and circumstances. *See id.*, 543 F.3d at 605. Here, the proposed relief is needed by all members of the putative class, which consists of all children taken into DHS custody based on a report of abuse or neglect. *See* Complaint at ¶ 43.

**B.** **The Putative Class and Plaintiffs' Proposed Remedies Are Sufficiently Cohesive To Warrant Class Certification**

In this case, Plaintiff Children have met all of the standards articulated in *Shook II* and *Vallario* for obtaining class certification.  First, Defendants' actions and inactions are "based on grounds generally applicable to all class members."  *Shook II*, 543 F.3d at 604.[3]  Moreover, as discussed below, each of the remedies proposed in the Statement of Relief complies with *Shook II* and *Vallario*.  In particular, each remedy has been described in sufficient detail that an injunction comporting with Rule 65(d) is "conceivable," and each remedy is manageable since it can be addressed in a single, class-wide injunction.

### 1.    Caseloads

The first remedy specified in the Statement of Relief proposes that DHS establish limits on the caseloads of DHS workers and supervisors assigned to Plaintiff Children based on the standards set by the Council on Accreditation ("COA") and the Child Welfare League of America ("CWLA").  *See* Statement of Relief at 2-3.  High caseloads harm foster children by impeding the ability of caseworkers to select, support and monitor children's placements, which, in turn, places foster children at greater risk of being harmed while in foster care.  *See* accompanying Affidavit of Peg Hess (attached hereto as Exhibit A) at ¶¶ 5d and 7a.  Setting a limit on worker caseloads is needed to enable DHS to monitor the safety, well-being and permanency of all members of the

---

[3] It is precisely because all class members are subject to the same harm and risks of harm as a result of DHS's ongoing failure to carry out its legally mandated placement, service and oversight responsibilities, that Plaintiff Children have satisfied the commonality and typicality requirements in Rule 23(a)(2) and (3).  *See* Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Brief in Support Thereof at 11-16 [Dkt. No. 4]; Reply Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel at 8-10, 12-14 [Dkt. No. 137].

putative class, and to reduce the harm that these children are experiencing.  *Id.* at ¶ 7b; *see also* Complaint at ¶¶ 75-83, 121-24.

The proposed caseload limits are sufficiently specific to meet the "conceivability" standard enunciated in *Shook II*.  For example, an injunction could provide that all caseworkers have a maximum caseload size of between 12 and 15 children, and that supervisors have no more than 5 caseworkers to supervise—the limits recommended by the CWLA.  In addition, this remedy raises no manageability concerns.  The injunction would not have to differentiate among class members, since all children in DHS custody, regardless of their individual circumstances, need workers who meet professional caseload standards.

### 2.     Education/Training

Plaintiff Children also propose that DHS be required to implement educational qualifications for DHS staff and comprehensive pre-service and in-service training for caseworkers, supervisors, foster parents and adoptive parents based on COA and CWLA professional standards.  *See* Statement of Relief at 3-4.  Poor training of caseworkers, supervisors and foster parents has contributed to the unconscionably high rate of abuse and neglect suffered by Oklahoma's foster children while in DHS custody.  *See* Ex. A at ¶ 7g.[4]  By reducing this danger, Plaintiff Children's proposal serves to protect the safety of all members of the proposed class.  *Id.*

Plaintiff Children's proposed remedy is sufficiently specific; it is "conceivable" that an injunction providing for such relief could pass muster under Rule 65(d), as both

---

[4] As of the time the Complaint was filed, Oklahoma was worst or second-to-worst among all states in each of the past five years for confirmed abuse or neglect of foster children in state custody.  *See* Complaint at ¶ 76.

the COA and CWLA list specific subjects that such training should include.   *See* Statement of Relief at 3-4.[5]   Moreover, this remedy does not raise any manageability concerns since all children need well-trained foster parents and workers regardless of any child's individual circumstances.   *Id.*

### 3. Availability of Necessary Resources for the Placement of Children

Plaintiff Children also propose (i) that an assessment be conducted by a qualified professional to determine, *inter alia*, the number and types of additional placements that are needed for foster children in DHS custody, and (ii) that the placements determined to be needed are then developed.   *See id.* at 4.   Because of the shortage of placement options in Oklahoma, Plaintiff Children are currently harmed by an exceptionally high rate of placement moves, and are placed far too often in overcrowded, poorly supervised shelters and other placements where children's needs cannot possibly be met.   *See* Ex. A at ¶¶ 7c and 7d.   By expanding the number and array of available placements, Plaintiff Children's proposal helps to ensure the stability and protect the safety of all members of the proposed class, and to redress the risks of harm to which they are all exposed.   *Id.* at ¶ 7c.

Plaintiff Children's proposal contains sufficient detail to be "conceivable" under Rule 65(d); indeed, the recent audit of DHS likewise recommended expanding the

---

[5] The need for systemic reform in the area of worker training was highlighted in a written report issued just last month following an audit of DHS performed by Hornby Zeller Associates, Inc. ("HZA") at the request of the Oklahoma House of Representatives.   (A copy of the report is attached hereto as Exhibit B.)   Specifically, HZA recommends that DHS "revise its training materials" in order to provide workers with information that will help them "gain the competencies they need to perform their jobs at a high level," and that DHS take steps to "ensure that every worker receives job-specific training as soon after starting a position as possible."   *Id.* at 149-50 (Recommendations 22 and 23).

number of placements available to Oklahoma's foster children.[6]   Moreover, such a remedy would not require time-consuming inquiry into the individual circumstances of class members, since all children, regardless of their individual circumstances, need access to a range of placement alternatives (*see id.*), and the determination of needed placements is based on aggregate information already available to DHS.

### 4.     Monitoring of Safety of Children in Placement

Plaintiff Children further propose that DHS visit all children in custody as frequently as set forth under COA and CWLA standards; and that DHS comply with its existing policies and processes for investigating reports of abuse and neglect of children in DHS custody, and for approving and overseeing of all types of placements that house such children.  *See* Statement of Relief at 5-6.  DHS's poor monitoring practices subject all Plaintiff Children to an unconscionably high risk of being abused or neglected while in DHS custody.  *See* Complaint at ¶¶ 75-83.  Requiring enhanced monitoring of foster children and their placements would help to reduce this risk.

Plaintiff's proposal is sufficiently specific that an injunction complying with the requirements of Rule 65(d) is "conceivable."  Indeed, the COA and CWLA have specific standards in place governing the frequency of worker visits (*see*, *e.g.*, Statement of Relief at 5), and DHS has existing written standards for investigating reports of abuse and neglect and for screening and inspecting placements.   Such relief would also be manageable because it is applicable to the class as a whole.  Monitoring (whether in the form of caseworker visits, investigations into possible abuse or neglect, or the approval

---

[6] In particular, HZA found, among other things, that more than half of the counties in Oklahoma need to develop additional foster homes, and that the state needs a total of 2,626 additional foster beds for children who cannot be placed with relatives.  Ex. B at 68, 70-71.

and oversight of foster homes) is critical to ensure the protection of all children in state custody, regardless of their individual circumstances.  *See* Ex. A at ¶ 7h.

### 5.   Outcomes for Children

Plaintiff Children also propose that DHS be required to meet the outcome measures set by the U.S. Department of Health and Human Services ("DHHS") in connection with its Child and Family Services Review ("CFSR").  *See* Statement of Relief at 6.   The CFSR is the federal government's program for assessing the performance of state child welfare agencies that receive federal funds in order to ensure that those agencies achieve positive outcomes for children and their families. Oklahoma had its second-round CFSR in 2007, and DHHS found that Oklahoma failed to achieve substantial conformity with <u>any</u> of the federal government's seven outcome measures aimed at ensuring the safety, permanency and well-being of foster children.[7]  *See* Ex. B at 10-11.   Requiring DHS to meet federal benchmarks on an agency-wide basis will minimize the risk of harm to all children in DHS custody.

An injunction that mandates compliance with these outcome measures will satisfy Rule 65(d)'s specificity requirement, since these measures are already defined by the federal government and are well known to DHS.  Moreover, the remedy is manageable because the federal government's outcome standards are aggregate measures that assess

---

[7] The seven outcomes are that: (1) children are, first and foremost, protected from abuse and neglect; (2) children are safely maintained in their homes whenever possible and appropriate; (3) children have permanency and stability in their living situations; (4) the continuity of family relationships and connections is preserved for children; (5) families have enhanced capacity to provide for their children's needs; (6) children receive appropriate services to meet their educational needs; and (7) children receive adequate services to meet their physical and mental health needs.  Each of these outcomes has multiple statistical indicators designed to provide an accurate measurement of the particular outcome.  *See* Ex. B at 9-10.

child welfare outcomes in Oklahoma as a whole, and thus would not enmesh the Court in any individual child's case or circumstances.

### 6.   Quality Assurance/Data

Plaintiff Children also propose that DHS implement a quality assurance ("QA") system that comports with the standards of the COA and CWLA.  *See* Statement of Relief at 6.   It is crucial for the protection of foster children that DHS have a system for monitoring its own services, identifying problem areas and implementing steps that need to be taken in order to improve those areas.   DHS's failure to build such basic controls into its operations contributes to the high rate of abuse and neglect, and the extraordinarily high rate of placement moves, that Plaintiff Children currently experience while in DHS custody.   By requiring a functioning QA process, Plaintiff Children's proposal will help to reduce these harms for all class members.  *See* Ex. A at ¶ 7j.[8]

Rule 65(d)'s specificity requirement does not impose any obstacle, as the essential features of a QA system are well known.   For example, under CWLA guidelines, a QA system should include, among other things, data collection instruments designed to capture demographic and service-utilization information, and review systems for monitoring the progress of children and their families.   *See* CWLA Standards for Excellence for Family Foster Care Services at ¶ 4.26.   Moreover, Plaintiff Children's proposed remedy is manageable—it will not require the Court to differentiate among class members or inquire into their individual circumstances, since all Plaintiff Children are entitled to be cared for by a child welfare agency that has a functioning QA process.

---

[8] The audit of DHS confirms that DHS needs to improve its QA system and recommends that DHS review its existing procedures "to ensure a focus on the quality of casework, including the soundness of assessments and decision-making . . . ."  Ex. B at 127.

### 7.   Monitoring/Enforcement

The final remedy proposed by Plaintiff Children is for the Court to appoint a neutral person to monitor DHS's compliance with the terms of the injunction under the Court's continuing jurisdiction.  *See* Statement of Relief at 6.  This portion of Plaintiff Children's proposed relief likewise does not present any obstacle under Rule 65(d) or require the Court to differentiate among class members.  *See* Ex. A at ¶ 7j.

## II.   It Would Be Premature For The Court To Limit Plaintiff Children's Potential Remedies At This Time

The Court has also asked the parties for their views on the permissibility of certifying a class with respect to some, but not all, of Plaintiff Children's proposed remedies. As established above, all of Plaintiff Children's proposed remedies meet the threshold requirements at the class certification stage.  Each one is directed to the system as a whole and to all class members.  Plaintiff Children's prior briefs also establish that the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met in this case.  *See* Dkt. Nos. 4 and 137.

Under *Shook II* and *Vallario*, potential remedies are examined at the class certification stage for the limited purpose of determining whether they are conceivable and manageable for the class as a whole.  Accordingly, as long as at least one form of proposed injunctive relief meets these thresholds, the putative class should be certified.[9] The Court should not attempt to determine at this stage, without discovery, which specific remedies may not be appropriate.  The question of the full range of specific relief

---

[9] A similar threshold inquiry governs the determination of whether commonality is established under Rule 23(a)(2).  In particular, only one common question of fact or law between the named plaintiffs and the putative class is required to establish commonality under that rule.  *See* Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Brief in Support Thereof, at 11 [Dkt. No. 4].

is premature at the class certification stage, and should be tailored to the facts proven at trial—after Plaintiff Children have had the opportunity to conduct system-wide merits discovery and to consult with experts, and after a finding of liability.

Moreover, neither *Shook II* nor *Vallario* lends any support to the notion that the Court may limit potential remedies at this early stage of the case.  In *Shook II*, the Tenth Circuit simply affirmed the District Court's outright denial of class certification.   In *Vallario*, the Tenth Circuit remanded the question of whether a class should be certified after finding that the district court adopted an unduly narrow construction of Rule 23(b)(2).

Finally, limiting the potential remedies now would unjustly prevent Plaintiff Children from establishing at trial the interrelatedness of the agency-wide problems and the specific remedies which can then be tailored to meet the requirements of Rule 65(d). Because the systemic problems set forth in Plaintiff Children's Complaint are interrelated, Oklahoma's foster children can only be protected by an agency in which *all* of Plaintiffs' proposed remedies are implemented.  *See* Ex. A at ¶¶ 6 and 9.  Without at least these remedies, children in DHS custody will continue to be deprived of the care and protection that they desperately need and deserve.  *Id.* at ¶¶ 8-9.

### Conclusion

For the foregoing reasons, class certification should be granted.


Dated: March 13, 2009

RESPECTFULLY SUBMITTED:

/s/ Frederic Dorwart
FREDERIC DORWART (Bar No. 2436)

/s/ Paul DeMuro
*(signed by Filing attorney with permission)*
PAUL DEMURO (Bar No. 17605)
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
Telephone:  918-583-9922
Facsimile:  918-583-8251
Email:  FDorwart@fdlaw.com
         PDemuro@fdlaw.com


/s/ R. Thomas Seymour
R. THOMAS SEYMOUR (Bar No. 8099)
*(signed by Filing attorney with permission)*
/s/ Scott A. Graham
SCOTT A. GRAHAM (Bar No. 19817)
*(signed by Filing attorney with permission)*
SEYMOUR & GRAHAM, LLP
100 W. Fifth Street, Suite 550
Tulsa, Oklahoma 74103-4288
Telephone:  918-583-5791
Facsimile:  918-583-9251
Email:  Rtseymour1@aol.com


/s/ Bruce Day
BRUCE DAY (Bar No. 2238)
*(signed by Filing attorney with permission)*
/s/ Joe E. Edwards
JOE E. EDWARDS (Bar No. 2640)
*(signed by Filing attorney with permission)*
DAY EDWARDS, PROPESTER &
CHRISTENSEN, PC
Suite 2900, Oklahoma Tower
210 Park Avenue
Oklahoma City, OK 73102
Telephone:  (405) 239-2121
Facsimile:  (405) 236-1012
Email:  bruceday@dayedwards.com
         edwards@dayedwards.com


/s/ Marcia Robinson Lowry
MARCIA ROBINSON LOWRY*(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Ira P. Lustbader
IRA P. LUSTBADER  *(pro hac vice)*
*(signed by Filing attorney with permission)*

/s/ William Kapell
WILLIAM KAPELL (*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ Yasmin Grewal-Kok
YASMIN GREWAL-KOK (*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ Jeremiah Frei-Pearson
JEREMIAH FREI-PEARSON (*pro hac vice*)
(*signed by Filing attorney with permission*)
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, New York 10001
Telephone:  (212) 683-2210
Facsimile:  (212) 683-4015
Email:  mlowry@childrensrights.org


/s/ Phillip A. Geraci
PHILLIP A. GERACI (*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ Mark A. Beckman
MARK A. BECKMAN(*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ R. Nadine Fontaine
R. NADINE FONTAINE (*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ Carly Henek
CARLY HENEK(*pro hac vice*)
(*signed by Filing attorney with permission*)
/s/ Andrew Bauer
ANDREW BAUER (*pro hac vice*)
(*signed by Filing attorney with permission*)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Telephone:  (212) 836-8000
Email:  pageraci@kayescholer.com
          mbeckman@kayescholer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th of March, 2009, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following ECF registrant(s):

DONALD M. BINGHAM
DONNA MARIE DE SIMONE
ROBERT P. SKEITH
HOLLY HILLERMAN
KRISTOPHER EDWARD KOEPSEL
JOHN PATRICK MENSCHING
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
502 West Sixth Street
Tulsa, OK 74119-1010
don_bingham@riggsabney.com
ddesimone@riggsabney.com
rskeith@riggsabney.com
hhillerman@riggsabney.com
kkoepsel@riggsabney.com
pmensching@riggsabney.com


ROBERT A. NANCE
MELVIN C. HALL
STEPHEN L. CORTES
THOMAS ASKEW
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
5801 N Broadway , Suite 101
Oklahoma City, OK 73118-7489
rnance@riggsabney.com
mhall@riggsabney.com
scortes@riggsabney.com
taskew@riggsabney.com

JOSEPH W. STREALY
RICHARD W. FREEMAN, JR.
RICHARD A. RESETARITZ
Department of Human Services
P.O. Box 53025
Oklahoma City, OK 73152-3025
joseph.strealy@okdhs.org
richard.freeman@okdhs.org
richard.resetaritz@okdhs.org

CATHERINE ANN O'LEARY
Department of Human Services
Tulsa District Child Support Enforcement
P.O. Box 3643
Tulsa, OK 74101
catherine.oleary@okdhs.org

SCOTT D. BOUGHTON
TRICIA L. EVEREST
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N.E. 21st Street
Oklahoma City, OK 73105
Scott.boughton@oag.ok.gov
Tricia.Everest@oag.ok.gov

/s/ Frederic Dorwart