UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| D.G., by Next Friend G. Gail Stricklin; et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Class Action |
| C. BRAD HENRY, in his official capacity as | ) Civil Action No. 08-CV-074-GKF-FHM |
| Governor of the State of Oklahoma, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE TO OKDHS DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MATERIALS CONSIDERED BY PLAINTIFFS' EXPERT WITNESSES**

The Plaintiff class ("Plaintiffs" or "Plaintiff Children") respectfully submits this Response to Defendants' March 9, 2011 Motion to Compel Production of Materials Considered by Plaintiffs' Expert Witnesses (Dkt. 490). The grounds for Plaintiffs' opposition to the motion are set forth in the following brief.

**BRIEF IN OPPOSITION TO MOTION**

**Preliminary Statement**

Defendants' motion is moot because Plaintiffs have disclosed all facts and data that their case record review expert, Dr. Milner, considered in forming his conclusions, as required under Fed. R. Civ. P. 26(a)(2)(B)(ii), as well as all other non-privileged documents that Defendants requested regarding his review.[1] Even before this motion was filed, Plaintiffs assured Defendants that Plaintiffs would meet their disclosure obligations under the Federal Rules, and Plaintiffs have lived up to their word. Despite Plaintiffs' assurances, Defendants went ahead with the

---

[1] The Milner report was the only class-related expert report produced by Plaintiffs before this motion was filed; Plaintiffs' other expert reports were produced after the filing of this motion. Thus, while the caption of Defendants' motion suggests that it is addressed to all of Plaintiffs' expert reports, the Milner report is the only report at issue on this motion.

motion anyway, challenging Plaintiffs' disclosures with respect to Dr. Milner's report *six days before those disclosures were due.* That Defendants would proceed in this manner is a testament to their priorities: they would prefer to use their resources for unnecessary motions rather than applying them toward the care of the foster children in DHS's custody.

### Statement of the Facts

On February 17, 2011, Plaintiffs served the expert report of Dr. Jerry Milner (the "Milner Report"). The report set forth his findings based on the review of 374 children's case files produced by DHS.[2] Plaintiffs served the Milner Report early so that Defendants would have the information in the report as soon as possible. Under the Court's Scheduling Order, Plaintiffs' expert identification and reports were not due until March 15, 2011. *See* Dkt. 402 ¶ 4.

On February 22, 2011, David Page of the Riggs, Abney firm, counsel for Defendants, sent a letter to Plaintiffs' counsel demanding the immediate production of 21 different categories of documents relating to Dr. Milner's case review that Mr. Page asserted to be "considered materials" required under Rule 26(a)(2)(B)(ii). Dkt. 490, Ex. 3 at 2. Plaintiffs' counsel responded by email on February 24, noting that some of Mr. Page's 21 categories sought information that Dr. Milner did <u>not</u> consider in forming his conclusions and thus were not required under the rule cited by Mr. Page. *See* Dkt. 490, Ex. 4. For example, Plaintiffs' counsel pointed out that in forming his opinions, Dr. Milner did not consider the resumes and CVs of the people who

---

[2] Dr. Milner is a Vice President with the Center for the Support of Families, Inc., and previously oversaw many similar case file reviews while with the Children's Bureau of the Administration for Children and Families, part of the U.S. Department of Health and Human Resources. A copy of the Milner Report is attached as Exhibit A hereto.

assisted him in the case record review (*see* category no. 9 in Mr. Page's February 22 letter),[3] nor every email he sent or received "concerning the case" (category no. 21). *See* Dkt. 490, Ex. 4.[4]

In response, Mr. Page sent an email later in the evening of February 24, requesting a meet and confer. Mr. Page's email also stated the 21 categories of materials listed in his February 22 letter "were required to be delivered with [Dr. Milner's] report." A copy of Mr. Page's email is attached as Exhibit B hereto. Plaintiffs responded the next day that their early production of the Milner Report did not obligate Plaintiffs to make early disclosure of all remaining facts and data that Dr. Milner considered in forming his conclusions,[5] and pointed out that the deadline for that information was not until March 15 under Judge Frizzell's Scheduling Order (Dkt. 402). *See* Dkt. 490, Ex. 5 at 1. Despite the fact that Defendants' demands for those documents were premature, Plaintiffs advised that they would discuss this matter further at a meet and confer. *Id.* at 2.

The meet and confer was held on March 1, 2011, still 14 days before the deadline for Plaintiffs' expert reports. During the conference, Plaintiffs' counsel specifically advised that Plaintiffs would be producing all materials that Dr. Milner considered in forming his opinions, and the basis and reasons for them, by March 15, as required under Fed. R. Civ. P. 26(a)(2)(B)(ii) and the Court's Scheduling Order. *See* Dkt. 490, Ex. 7 at 1 (Plaintiffs will produce "those documents that Dr. Milner considered in forming his opinions, and the basis and reasons for them."); *id.* ("Plaintiffs will be doing their best to produce the documents by the March 15, 2011 deadline set forth in the Court's Scheduling Order for the submission of

---

[3] Dr. Milner considered the backgrounds of those individuals not in forming his conclusions, but for the purpose of deciding whether to retain them for the case record review.

[4] As set forth below, those emails that contained facts or data that Dr. Milner considered in forming his conclusions were produced on March 15, 2011.

[5] Defendants already had possession of the individual case files upon which Dr. Milner's review was based.

3

Plaintiffs' expert reports."). Moreover, even though some of the 21 categories of documents in Mr. Page's February 22 letter sought information that Dr. Milner did not consider in forming his opinions, Plaintiffs advised that they would treat those requests as having been made under Fed. R. Civ. P. 34. *See* Dkt. 490, Ex. 7. Plaintiffs' counsel memorialized the parties' discussion in a letter dated March 1, 2011. *See id.* Defendants never took issue with any statement in that letter.

Defendants filed this motion on March 9, six days before Plaintiffs' March 15 deadline for submitting their expert reports. On the same day, Defendants also filed a motion to extend the May 15, 2011 deadline in Judge Frizzell's Scheduling Order for Defendants' own expert reports, so that Defendants would have more time "to study the materials relied upon by the Plaintiffs' expert [Dr. Milner]." Dkt. 491 ¶ 7. As the basis for their extension request, Defendants argue that Plaintiffs were required to produce the facts and data considered by Dr. Milner in forming his conclusions on February 17, notwithstanding the March 15 deadline in the Court's Scheduling Order. Defendants seek an extension "equal to the number of days between February 17, 2011 . . . and the date upon which the Plaintiffs produce the data and materials considered" by Dr. Milner. *Id.*

On March 15, 2011, Plaintiffs produced all of the facts and data that Dr. Milner considered in forming his conclusions, with the exception of the 374 individual children's case files that Dr. Milner selected for review, since those files were already in Defendants' possession, custody and control. This production complied with Rule 26(a)(2)(B)(ii) and with the Court's Scheduling Order. Among other things, Plaintiffs produced:

- all completed case review instruments for every one of the 374 case files reviewed (including both before and after inter-rater reliability and quality assurance reviews had been completed);

- all completed inter-rater reliability and quality assurance forms completed by the people involved in those efforts;
- all versions of the data set and output analyses generated by Dr. Milner's data analyst;
- communications from Plaintiffs' counsel to Dr. Milner identifying and providing facts that Dr. Milner considered in forming his conclusions; and
- copies of literature and articles cited in the Milner Report.

In addition to the foregoing materials, Plaintiffs produced other documents on March 15 that Dr. Milner did not consider in forming his conclusions, but were responsive to Mr. Page's February 22 letter. Those documents included training materials; Dr. Milner's work plans, staffing rosters and case tracking spreadsheets; Dr. Milner's budget and invoice documents; the resumes of all members of Dr. Milner's review team; and communications between Plaintiffs' counsel and Dr. Milner regarding compensation for the case record review. All told, Plaintiffs produced 107,997 pages of materials to Defendants on March 15 regarding Dr. Milner's review.

Plaintiffs also provided Defendants with further information requested by Defendants' counsel on March 18. (A copy of Defendants' March 18 request is attached hereto as Exhibit C.) In particular, Defendants asked Plaintiffs to identify the specific Bates ranges of certain documents included in the March 15 production and to produce certain Excel spreadsheets included in the March 15 production a second time, in their native Excel format. Though under no duty to do so, especially since Defendants never specified a preferred format for these documents and the format selected by Plaintiffs was the one commonly used by the parties, Plaintiffs provided the requested information promptly on March 25.

In a letter dated March 25, 2011 (attached as Exhibit D hereto), Defendants' counsel raised one other issue concerning Plaintiffs' production of the Milner documents. Specifically,

5

Defendants complained that certain electronic files – in particular, the data set files and the input and output files – were produced in TIFF format rather than in their native SPSS format. *See* Ex. D at 1-2. As Plaintiffs' counsel explained, however, Plaintiffs produced these files (to the extent they existed) in TIFF format in order to ensure that Defendants would be able to open and review them. *See* Exhibit E hereto at 1. Similarly, most of the documents (other than emails) that Defendants have produced in this case have been given to Plaintiffs in TIFF format, as that is the format that the parties agreed to early on. *Id.* In any case, Defendants have had access to the information in these files since March 15, when they were produced. *Id.* Moreover, Defendants never raised an issue regarding the format in which those files was produced until the March 25 letter from their counsel, even though, as discussed above, Defendants requested on March 18 that *other* files be re-produced in their native format (*see* Ex. C), which Plaintiffs promptly did. In the same spirit of cooperation, Plaintiffs re-produced the data set and output files in native format on March 29, just two business days after receiving the March 25 letter.[6]

On March 29, 2011, Plaintiffs also produced all remaining documents requested by Defendants in Mr. Page's February 22 letter relating to Dr. Milner's review. These documents did not contain facts or data that Mr. Milner considered for the purpose of forming his conclusions and thus were not required to be produced by the March 15 deadline. Instead, the March 29 production included all signed confidentiality statements for Dr. Milner's team and communications between Dr. Milner's team related to some of the details of the case record review, many of which were not even sent to Dr. Milner, such as emails between the Project

---

[6] Plaintiffs also confirmed to Defendants that there were no input files.

Coordinator and case readers regarding the assignment of individual case files for review and the completion of those reviews.[7]

As the foregoing discussion makes clear, Plaintiffs have been extremely diligent in producing the required documents in a timely manner and in responding to Defendants' follow-up requests. All facts and data considered by Dr. Milner in forming his expert conclusions have been disclosed in accordance with Rule 26(a)(2)(B)(ii), and the remaining documents requested in Mr. Page's February 22 letter have been produced. There are no other documents to produce and thus, no need for the order sought by Defendants.[8]

## ARGUMENT

**I.  Defendants' Motion to Compel Is Moot Because Plaintiffs Have Already Produced All Non-Privileged Documents Relating to Dr. Milner's Review.**

In their Motion to Compel, Defendants seek an order requiring Plaintiffs to provide all facts and data considered by Dr. Milner in forming his expert conclusions by "no later than March 15, 2011." Dkt. 490 at 5, 16. As discussed above, Plaintiffs produced all such information by March 15. Moreover, Plaintiffs produced all remaining documents requested in Mr. Page's February 22 letter by March 29. Accordingly, their motion is moot.[9]

---

[7] Plaintiffs produced these documents pursuant to Fed. R. Civ. P. 34, subject to certain objections set forth in a letter from Plaintiffs' counsel to Mr. Page dated March 23, 2011, a copy of which is attached hereto as Exhibit F.

[8] Toward the end of Defendants' moving brief, Defendants argue that they should be given extra time for their rebuttal expert reports (*see* Dkt. 490 at 14-16); however, Defendants do not seek the extension pursuant to this Motion to Compel, but rather pursuant to a separate "Motion for an Order Amending the Scheduling Order (Dkt. 402) and Granting Additional Time to Submit Rebuttal to Plaintiffs' Expert Report (Milner)" (Dkt. 491). Accordingly, Plaintiffs address Defendants' extension request in their response to that motion, not here.

[9] While Defendants also argue that they are entitled to a privilege log (*see* Dkt. 490 at 10), such logs are not required for work product material created after the commencement of the action. *See* LCvR 26.4. Here, the documents withheld from the Milner production consist of drafts of Dr. Milner's report, as well as other work product created after this case was commenced, all of which is privileged under Fed. R. Civ. P. 26(b)(3)(A) and (B) and 26(b)(4)(B) and (C).

## **Conclusion**

For the foregoing reasons, Plaintiff Children respectfully request that the Court deny Defendants' Motion to Compel (Dkt. 490).

Dated: March 30, 2011

        RESPECTFULLY SUBMITTED:

/s/ Frederic Dorwart
FREDERIC DORWART (Bar No. 2436)
 *(signed by Filing attorney with permission)*
/s/ Paul DeMuro
*(signed by Filing attorney with permission)*
PAUL DEMURO (Bar No. 17605)
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
Telephone: 918-583-9922
Facsimile: 918-583-8251
Email: FDorwart@fdlaw.com
       PDemuro@fdlaw.com

/s/ R. Thomas Seymour
R. THOMAS SEYMOUR (Bar No. 8099)
*(signed by Filing attorney with permission)*
/s/ Scott A. Graham
SCOTT A. GRAHAM (Bar No. 19817)
*(signed by Filing attorney with permission)*
SEYMOUR & GRAHAM, LLP
100 W. Fifth Street, Suite 550
Tulsa, Oklahoma 74103-4288
Telephone: 918-583-5791
Facsimile: 918-583-9251
Email: Rtseymour1@aol.com

/s/ Marcia Robinson Lowry
MARCIA ROBINSON LOWRY*(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Ira P. Lustbader
IRA P. LUSTBADER  *(pro hac vice)*
*(signed by Filing attorney with permission)*

---

Accordingly, a privilege log is not required. In any event, Plaintiffs have not withheld any facts or data that Dr. Milner considered in forming the conclusions in his report.

/s/ William Kapell
WILLIAM KAPELL *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Yasmin Grewal-Kok
YASMIN GREWAL-KOK *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Jeremiah Frei-Pearson
JEREMIAH FREI-PEARSON *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Gena E. Wiltsek
GENA E. WILTSEK *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Patrick S. Almonrode
PATRICK S. ALMONRODE *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Miriam F. Ingber
MIRIAM F. INGBER *(pro hac vice)*
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, New York 10001
Telephone:  (212) 683-2210
Facsimile:  (212) 683-4015
Email:  mlowry@childrensrights.org

/s/ Phillip A. Geraci
PHILLIP A. GERACI *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Angela Vicari
ANGELA VICARI*(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ John Cahalan
JOHN CAHALAN*(pro hac vice)*
*(signed by Filing attorney with permission)*
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Telephone:  (212) 836-8000
Email:  pageraci@kayescholer.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 30th day of March, 2011, I served the foregoing document by electronic transmission upon the following persons:

DONALD M. BINGHAM
DONNA MARIE DE SIMONE
HOLLY HILLERMAN
KRISTOPHER EDWARD KOEPSEL
JOHN PATRICK MENSCHING
DAVID PAGE
STEPHANIE THEBAN
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
502 West Sixth Street
Tulsa, OK 74119-1010
don_bingham@riggsabney.com
ddesimone@riggsabney.com
hhillerman@riggsabney.com
kkoepsel@riggsabney.com
pmensching@riggsabney.com
dpage@riggsabney.com
stheban@riggsabney.com

ROBERT A. NANCE
MELVIN C. HALL
THOMAS ASKEW
SHARON GENTRY
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
5801 N Broadway , Suite 101
Oklahoma City, OK 73118-7489
rnance@riggsabney.com
mhall@riggsabney.com
taskew@riggsabney.com
sgentry@riggsabney.com

JOSEPH W. STREALY
RICHARD W. FREEMAN, JR.
RICHARD A. RESETARITZ
Department of Human Services
P.O. Box 53025
Oklahoma City, OK 73152-3025
joseph.strealy@okdhs.org
richard.freeman@okdhs.org
richard.resetaritz@okdhs.org

CATHERINE ANN O'LEARY
Department of Human Services
Tulsa District Child Support Enforcement
P.O. Box 3643
Tulsa, OK 74101
catherine.oleary@okdhs.org

SCOTT D. BOUGHTON
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N.E. 21st Street
Oklahoma City, OK 73105
scott.boughton@oag.ok.gov

/s/ Miriam Ingber