## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| D.G., by Next Friend G. Gail Stricklin, *et al.*, | ) | |
| for themselves and those similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Class Action** |
| | ) | **Civil Action No. 08-CV-074-GKF-FHM** |
| C. BRAD HENRY, in his official capacity | ) | |
| as Governor of the State of Oklahoma, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFFS' MOTION TO BAR SHANNON RIOS FROM TESTIFYING AS AN EXPERT WITNESS AND TO REQUIRE DEFENDANTS TO PRODUCE THE DOCUMENTS CONSIDERED BY THEIR OTHER NON-RETAINED EXPERTS

The Plaintiff class ("Plaintiff Children" or "Plaintiffs") respectfully moves pursuant to Rule 37(c)(1) to bar the trial testimony of Shannon Rios, one of Defendants' proposed expert witnesses, on the ground that Defendants have failed to provide Dr. Rios's report under Rule 26(a)(2)(B) or any of the documents that she considered in forming her proffered opinions. Plaintiffs also move under Rules 34 and 37(a) for an order compelling Defendants to produce the documents considered by their nine other non-retained experts in forming their expert opinions. Plaintiffs specifically requested those documents in a formal Rule 34 document request that Defendants claim has no legal effect.

### BRIEF IN SUPPORT OF MOTION

### Preliminary Statement

Defendants have disclosed that they intend to use Dr. Shannon Rios, a Research Manager with the Oklahoma Department of Human Services ("DHS") Office of Planning, Research and Statistics, as a testifying expert in order to rebut the testimony of Plaintiffs' expert Dr. Jerry Milner. Dr. Milner's 188-page report (the "Milner Report") (attached hereto as Ex. A)

summarizes the results of an in-depth review and analysis of the case records of 374 children in DHS custody for at least 60 days as of March 1, 2010.  Defendants have refused, however, to provide a rebuttal report from Dr. Rios and claim that she does not fall within the category of experts who are required to produce reports under Rule 26(a)(2)(B).

Instead, on June 15, 2011, Defendants' deadline for providing their expert witness disclosures in response to the Milner Report, Defendants provided a five-page document, signed only by counsel, purporting to be a summary disclosure pursuant to Rule 26(a)(2)(C) of the topics, facts, and opinions about which Dr. Rios intends to testify (the "June 15 Disclosure") (attached hereto as Ex. B).  The June 15 Disclosure describes, at a high level of generality, certain analyses that Dr. Rios performed, using both Dr. Milner's data and three other data sets specially gathered for her from the DHS computer system.  According to the disclosure, Dr. Rios independently analyzed the relationships between at least sixteen variables studied by Dr. Milner in his case record review.  In addition to failing to produce a report by Dr. Rios, Defendants did not disclose the specific results Dr. Rios obtained or produce any of her considered materials.

It is obvious from the limited information provided by Defendants on June 15 that Dr. Rios performed the work described therein at the direction of Defendants' counsel for the specific purpose of assisting in the defense of this litigation, and that her analysis was outside the scope of her normal duties.  Under such circumstances, the case law supports the conclusion that, notwithstanding her status as an employee of Defendants, Dr. Rios was "specially employed to provide expert testimony in the case" and was therefore required to submit an expert report satisfying Rule 26(a)(2)(B).

In addition to Dr. Rios, Defendants have also identified nine other non-retained experts— eight in a Rule 26(a)(2)(C) disclosure statement dated June 9, 2011 (the "June 9 Disclosure")

(attached hereto as Ex. C) and one in the June 15 Disclosure.  Plaintiffs do not contend that these nine experts were required to provide a report under Rule 26(a)(2)(B).  Defendants, however, have refused to provide any of their considered materials, even though Plaintiffs specifically requested such materials pursuant to a formal Rule 34 request for production served on April 21, 2011 (the "Expert RFP") (attached hereto as Ex. D), and Defendants, in their May 23, 2011 response to that request (the "Response") (attached hereto as Ex. E), agreed to produce all non-privileged documents.

Defendants' failure to provide the required report and considered materials from Dr. Rios, or the documents considered by their nine other non-retained expert witnesses, is severely prejudicial to Plaintiffs in light of the July 15 expert discovery deadline in this case.  Indeed, even if Dr. Rios's report and considered materials were produced today, Plaintiffs would still be highly prejudiced as they have already lost one of the four weeks (from June 15 to July 15) provided to them under the Court's scheduling order to review the materials in time to depose Dr. Rios by the July 15 discovery deadline.  Accordingly,  Plaintiffs request that the Court issue an order barring Defendants, pursuant to Rule 37(c)(1), from offering the expert testimony of Dr. Rios at trial on the topics described in the June 15 Disclosure.[1]  Alternatively, Plaintiffs request that the Court issue an order requiring Defendants to provide complete disclosure by Dr. Rios of all her opinions, conclusions, and factual bases and all of her considered materials immediately.

In addition, with respect to the nine other non-retained experts, Plaintiffs request that the Court issue an order requiring Defendants to provide all of the materials required in the Expert RFP at once.

---

[1] Dr. Rios is also identified as a non-reporting witness, on topics other than the Milner Report, in the June 9 Disclosure.  Plaintiffs do not seek to bar Dr. Rios's testimony on those topics, but rather seek the same relief sought in connection with the other nine non-reporting experts—immediate production of her considered materials.

## FACTUAL BACKGROUND

In February and March 2011, Plaintiffs timely served on Defendants four expert reports, in compliance with Rule 26(a)(2)(B) and the Second Amended Scheduling Order in this action (Dkt. 519) (the "Scheduling Order").  Among these reports was one by the Center for the Support of Families, Inc., authored principally by Dr. Jerry Milner, which was served on Defendants on February 17, 2011—almost a month before Plaintiffs' March 15, 2011 deadline.[2]

On April 21, 2011, Plaintiffs served on Defendants the Expert RFP which sought, among other things, "all documents reviewed by Defendants' designated experts in connection with the preparation of their expert reports *or in connection with their role as designated experts in this case.*"  *See* Ex. D at Document Request No. 1 (emphasis added).  On May 23, 2011, Defendants served their Response, and stated in response to each Request that with the exception of privileged materials, "all documents" relating to "Defendants' designated experts in connection with the preparation of the expert reports or in connection with their role as designated experts in this case" would be "produced with the Defendants' designated expert reports."  Although the language of the Expert RFP expressly contemplated the production of the considered materials for *all* experts, whether they provided a report or not, Defendants did *not* specifically object to the production of the non-privileged documents of their non-reporting experts, or make any mention of the fact that they were withholding the documents of their non-reporting experts.[3]

---

[2] Pursuant to the Scheduling Order, Defendants' expert disclosures were to be served no later than June 9, 2011.  By agreement of the parties, the deadline for Defendants' expert disclosures relating to the Milner Report was extended to June 15, 2011.

[3] Defendants' inclusion in their Response of the statement that the considered materials would be produced "with the Defendants' designated expert reports" was patently insufficient to put Plaintiffs on notice that Defendants objected to the production of the considered materials of the non-reporting experts.  If this language forms any part of Defendants' opposition to this Motion, it will be, as the saying goes, "too cute by half."

On June 9 and 15, 2011, Defendants provided Plaintiffs with 14 rebuttal reports by no fewer than *10* different experts.  Four of the reports (by five experts) were produced on June 15 and address Dr. Milner's report.  In addition, Defendants identified 10 other expert witnesses who, they claim, are excused from providing a report because they do not fall within the categories of experts required to submit a report under Rule 26(a)(2)(B).  Instead, Defendants included descriptions of the proffered testimony that purport to be the summary disclosures required for non-reporting experts pursuant to Rule 26(a)(2)(C).  Dr. Rios was one of two experts identified in the June 15 disclosure.

In the June 15 Disclosure, which is exclusively concerned with expert testimony intended to rebut the Milner Report, Defendants disclose, pursuant to Rule 26(a)(2)(C)(i), the following "subject matter on which [Dr. Rios] is expected to present evidence":

> Personal and professional background, including current and former employment, duties and experience.

> Methodology and results of analysis of data on children in Milner sample and three versions of population of children in OKDHS foster care.

> Representativeness of Milner sample of all children in OKDHS foster care.

> Lack of statistically significant relationships between certain variables in Milner's sample and other population comparison groups.

Ex. B at 1.

The June 15 Disclosure also purports to contain a "[s]ummary of the facts and opinions to which the witness is expected to testify," as required under Rule 26(a)(2)(C)(ii).  *Id.* at 1-5.  This summary contains a three-paragraph description of Dr. Rios's methodology, disclosing that (1) Dr. Rios obtained data from DHS's computer system for the 374 children in Dr. Milner's sample (the "Milner Sample Data") rather than conducting a case record review (with no disclosure about the specific data elements that were gathered), and (2) Dr. Rios "conducted data analysis"

using "SPSS software" on both the Milner Sample Data and on three additional "data sets" consisting of (a) all children in custody for more than 60 days as of June 1, 2010; (b) children removed from their homes in state fiscal year ("SFY") 2008 for more than 60 days; and (c) children removed from their homes in SFY 2008 for more than 8 days. *Id.* at 1-2.

The June 15 Disclosure also describes, in very general terms, the analysis performed by Dr. Rios using these four data sets. *Id.* at 3-4. For example, it states that for a number of variables, the "mean, median, mode, minimum and maximum values were . . . calculated," that "T-Tests were run to determine if the means found in the sample . . . were different from the means found in the comparison populations," that "Crosstabs - Chi Square Analysis" was performed, and that "Logistic Regression Analyses" were performed. *Id.* For each of these types of analyses, the June 15 Disclosure makes general statements about Dr. Rios's conclusions, such as that "[t]here is not a statistically significant relationship between [missed visits] and Maltreatment in Care." *Id.* at 3. No facts are provided to support those conclusions; instead the June 15 Disclosure states only that "Dr. Rios can testify to the specific results of these statistical tests." *Id.* at 3-4.

Finally, the June 15 Disclosure describes in general terms certain opinions Dr. Rios developed, ostensibly based on the undisclosed facts and test results, including that "[t]he Milner Sample is not representative of children in OKDHS foster care," "[t]he Milner sample cannot be a simple random sample," and "Milner et al. did not perform the correct statistical tests, or enough statistical tests, to examine relationships between variables." *Id.* at 5. The June 15 Disclosure fails to state the factual bases for these opinions or what statistical tests Dr. Rios believes Dr. Milner should have performed.

6

On June 20, 2011, Plaintiffs informed Defendants of their belief that the disclosures with respect to all ten non-reporting experts were deficient because, among other things, Dr. Rios had failed to submit a report and her considered materials, and the nine other non-retained experts had also failed to provide documents responsive to the Expert RFP.  Plaintiffs requested an immediate meet-and-confer.  *See* Email William Kapell to Robert Nance (June 20, 2011), attached hereto as Ex. F.  In a June 21 email, Defendants' counsel did not respond to Plaintiffs' request for a meet and confer, stating only that they would not produce a report for Dr. Rios, and that they would produce the "data and results of statistical tests about which Dr. Rios will testify" and "additional information as we determine its relevance."  *See* Email from Robert Nance to William Kapell (June 21, 2011), attached hereto as Ex. G at 5.  Accordingly, on June 22, Plaintiffs reiterated their request for an immediate meet and confer.  *See* Ex. G at 4.  Even then, Defendants continued to delay until finally agreeing to make themselves available for a meet and confer on June 24.  *See id.*  As a result of Defendants' delay tactics, Plaintiffs have gone another four days (from June 20 to 24) without the materials that Defendants should have produced on June 15.

Moreover, during the meet and confer, Defendants continued to take the position that Dr. Rios was not required to provide an expert report; that Plaintiffs were not entitled to her considered materials by June 15 under Rule 26(a)(2)(B) or pursuant to Plaintiffs' Rule 34 document request; and that, despite Plaintiffs' formal Rule 34 request, Plaintiffs were not entitled to the documents considered by Defendants' nine other non-retained witnesses.  Defendants did, however, offer to produce by the end of the day or on Monday, June 27, the four data sets used by Dr. Rios and about 170 pages of other material that was described by counsel as setting out the results of her tests.  As discussed below, Defendants' untimely production of this material is

far too little, too late.  Plaintiffs have already been substantially prejudiced by Defendants' lack of disclosure, both as to Dr. Rios and as to the nine other non-retained experts.  Accordingly, Plaintiffs' motion should be granted.

## ARGUMENT

### I.    The Testimony of Dr. Rios Should Be Barred

#### A.    Dr. Rios Was Required To Submit a Report by June 15

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure states that a party's expert disclosure "*must* be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case *or* one whose duties as the party's employee regularly involve giving expert testimony" (emphasis added).  Here, Defendants argue that Dr. Rios does not have to provide a report because she is an employee of DHS whose duties do not regularly involve giving expert testimony.  *See* Ex. G.  Presumably, they are relying on the Tenth Circuit's decision in *Watson v. United* States, 485 F.3d 1100, 1107 (10th Cir. 2007), where the Court recognized that employees who do not regularly give expert testimony may be exempt from having to provide expert reports.  The *Watson* case, however, involved a physician and in ruling that this doctor was not required to provide a report, the Tenth Circuit made pointed reference to the policy that militates in favor of exempting physicians from having to prepare expert reports so that resources are not diverted from patient care.  *Id.*  Clearly, no such policy applies in this case.

Just as significantly, the *Watson* case did not analyze the first prong of Rule 26(a)(2)(B) – whether the witness was "specially employed to provide expert testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  Cases decided after *Watson* shed important light on this issue.[4]

---

[4] Having refused to provide an expert report by Dr. Rios, Defendants bear the burden of proof to show that a report is not required.  *Silver v. Shapiro*, No. 10-cv-01856-CMA-KLM, 2011 WL

Indeed, a Court in this district recently recognized that a witness may be "specially employed" under the first prong of Rule 26(a)(2)(B), and thus required to provide a report, where the witness has been "hired, directed, or in any way instructed by the counsel" and where the witness's opinions have been developed "outside the scope of his general employment . . . ." *United States ex rel. Sanchez-Smith v. AHS Tulsa Reg'l Med. Ctr. LLC*, No. 05-CV-442-TCK-PJC, 2010 WL 4641665, at *1 (N.D. Okla. Nov. 5, 2010); *see also Nat'l R.R. Passenger Corp. v. Ry. Express, LLC*, 268 F.R.D. 211, 217 (D. Md. 2010) ("[W]here employees . . . have reviewed information solely in preparation for litigation, they must produce expert reports[.]"); *Meredith v. Int'l Marine Underwriters*, No. JKB-10-837, 2011 WL 1466436, at *4 (D. Md. Apr. 18, 2011) (where expert is to testify about opinions "formed specifically in anticipation of the litigation, or otherwise outside the normal course of a duty," a written report is required); *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 690 (M.D. Ala. 2000) (report required where corporation "authorizes the employee to perform special actions that fall outside of the employee's normal scope of employment").

Similarly, in *Morris*, another post-*Watson* decision in this Circuit, the Court held that it was appropriate to examine "the nature of [the non-reporting witness's] proposed testimony" in determining whether an expert witness must provide a report and that in "the vast majority of cases," experts "are required to provide a report." *Id.*, at *5, 7-8; *see also Silver*, 2011 WL 1321798, at *2 ("It is the substance of the expert's testimony, not the status of the expert, which dictates whether a Rule 26(a)(2)(B) report will be required.") (quoting *Stone v. Deagle*, No. 05-cv-1438-RPM-CBS, 2006 U.S. Dist. LEXIS 90430, at *10 (D. Colo. Dec. 14, 2006)); *Wreath v.*

_____

1321798, at *3 (D. Colo. Apr. 5, 2011); *Morris v. Wells Fargo Bank, N.A.,* No. 09-cv-02160-CMA-KMT, 2010 U.S. Dist. LEXIS 68785, at *6 (D. Colo. June 17, 2010); *Cinergy Commc'n Co. v. SBC Commc'ns*, No. 05-2401-KHV-DJW, 2006 WL 3192544, at *3 (D. Kan Nov. 2, 2006).

*Kansas*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("The determinative issue is the scope of the proposed testimony.").

Here, Dr. Rios was instructed by counsel to conduct the statistical tests described in the June 15 Disclosure, as it is inconceivable that she would have performed those analyses without counsel's knowledge and blessing. Indeed, it is beyond reasonable dispute that she would never have assembled the data or conducted those tests at all were it not for the litigation. Thus, she is clearly offering opinions about "facts made known to [her] outside of her regular employment duties." *Sanchez-Smith*, at *2.

Examination of the nature and scope of Dr. Rios's proposed testimony also strongly militates in favor of the conclusion that she should have provided a report. As discussed above, her testimony has been developed solely for litigation purposes and is based on facts that she would not have known but for this lawsuit. Moreover, she has engaged in a full-blown data analysis of a highly technical nature typically performed by retained experts. *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting*, No. 02-12101-RWZ, 2006 WL 1766434, at *36 (D. Mass. June 28, 2006) (holding that an expert report was required for testimony based upon "scientific, technical, or other specialized knowledge").

Furthermore, unlike a typical non-reporting expert, Dr. Rios has no personal knowledge of the facts at issue in the case. *See Hilkene v. WD-40 Co.*, No. 04-2253-KHV-DJW, 2006 WL 2088311, at *2 (D. Kan. July 25, 2006) (holding that a report is required where expert testimony "goes beyond the experts' personal knowledge as actor or viewer with respect to the transactions or occurrences that are part of the subject matter of the lawsuit[.]"); *cf. Full Faith Church of Love West, Inc. v. Hoover Treated Wood Prods., Inc.*, No. Civ. A. 01-2597-KHV, 2003 WL 169015, at *1 (D. Kan. Jan. 23, 2003) (finding that no report was required from general contractors who

10

based testimony "on facts . . . learned during the course of their work as general contractors").[5] Where, as here, an employee of a party is "called solely or principally to offer expert testimony"—rather than as a "fact witness[]" who "may also express some expert opinions"— the employee "may fairly be viewed as having been 'retained' or 'specially employed' for that purpose." *Lee v. Valdez*, No. 3:07-CV-1298-D, 2008 WL 4287730, at *2 (N.D. Tex. Sept. 18, 2008); *KW Plastics*, 199 F.R.D. at 689 (exemption from the report requirement is "addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions") (quoting *Day v. Consol. Rail Corp.*, No. 95 Civ. 968 (PKL), 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996)).[6]

In sum, Defendants should have provided an expert report for Dr. Rios.  She has conducted highly technical, computer-based analyses; she never would have run those analyses or assembled the data upon which they were based but for the litigation; and she is proffering pure expert opinion with no personal knowledge of the facts or subject matter of the suit.  Under these circumstances, it is patently unfair and highly prejudicial for Defendants to hide the facts and documents upon which her work is based in a brief five-page summary.

## B.      Dr. Rios Was Required To Provide Her Considered Materials

Because Dr. Rios was required to submit a written report pursuant to Rule 26(a)(2)(B),

---

[5] The fact that Dr. Rios lacks any personal knowledge of the facts at issue distinguishes this case from *Nester Commercial Roofing, Inc. v. American Builders and Contractors Supply Co.*, No. 06-6290, 250 Fed. Appx. 852, 2007 App. LEXIS 23829 (10th Cir. Oct. 10, 2007), where the Court ruled that plaintiffs' accountant, who would be providing non-expert testimony concerning the tax returns he prepared, was not required to provide an expert report as to plaintiffs' lost profits.  Here, Dr. Rios can offer no analogous fact testimony.  Rather, Defendants proffer her solely as an expert witness.

[6] It makes no difference that Dr. Rios may not be getting paid extra by DHS for her expert work. *See Day*, 1996 WL 257654, at *3 (noting that "the rules contain no disclosure exception for experts who are not monetarily compensated" and holding that employee who was being called solely or principally to offer expert testimony must provide a report).

Defendants were also required to provide, no later than June 15, "the facts or data [Dr. Rios] considered . . . in forming" her opinions, pursuant to subsection (ii) of that rule. Defendants have not done so. Even if Dr. Rios were not required to submit a written report, Plaintiffs' Expert RFP requested the considered materials of all of Defendants' experts, including Dr. Rios, whether or not they prepared a written report. *See* Ex. D. Defendants, in their Response, did not object to the production of considered materials of non-reporting experts, and thereby waived any such objection. Thus, whichever category of expert Dr. Rios falls into, Defendants were obligated to produce, pursuant to the Scheduling Order, her considered materials no later than June 15, 2011.

**C.   Plaintiffs Have Been Severely Prejudiced by Defendants' Lack of Disclosure Concerning Dr. Rios's Analysis of the Milner Report**

Where a party fails to make the disclosures required by Rule 26(a), the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]" Fed. R. Civ. P. 37(c)(1).[7] To escape this consequence, Defendants must show that the failure to disclose the information is "harmless" or that the failure was "substantially justified."[8] *Id.*

Here, the omissions are clearly not harmless. The purpose of an expert report is to allow the opposing party "a reasonable opportunity to prepare for effective cross examination and

---

[7] Defendants' failure to provide, by June 15, 2011, a report for Dr. Rios, and her considered materials (whether or not a report is required), is also a violation of the Scheduling Order. These failures subject Defendants to sanctions, including a prohibition on "introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

[8] The Tenth Circuit has established a four-factor test to determine if a failure to disclose is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." The first two of these factors, discussed in this section, clearly weigh in favor of excluding Dr. Rios's testimony. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

perhaps arrange for expert testimony from other witnesses." *Jacobsen*, 287 F.3d at 953.  In light of the complex and technical nature of the analysis performed by Dr. Rios, the failure to produce a report or considered materials severely impairs Plaintiffs' ability to seek expert assistance in challenging her testimony or to conduct an examination of her that will result in a complete understanding of the data she used, her analysis and results, and the basis of her opinions.  As there are only 21 days remaining in the period allotted under the Scheduling Order for Plaintiffs' to depose Defendants' 20 identified expert witnesses, permitting Dr. Rios to submit a report and supporting documents at this late date would leave insufficient time for Plaintiffs to adequately prepare for her deposition.  Thus, the sanction of excluding Dr. Rios's testimony on the subjects listed in the June 15 Disclosure is appropriate.

In the alternative, Plaintiffs request that Defendants be compelled to immediately produce complete disclosure concerning Dr. Rios's opinions, conclusions and factual bases, along with all of her considered materials, in order to avoid any further prejudice in connection with her deposition.  Such disclosure is warranted even if the Court determines that no report is required from Dr. Rios under Rule 26(a)(2)(B) because the disclosures that Defendants have provided under Rule 26(a)(2)(C) are inadequate. [9]  *See Watson,* 485 F.3d at 1108 (district courts may

---

[9] The deficiencies in the June 15 Disclosure include, but are not limited to:

• a failure to provide any information concerning Dr. Rios's qualifications as an expert or the scope of her expertise;

• a failure to provide any specific information about the meaning or significance of the "T-Tests," "Crosstabs - Chi Square Analysis," and "Logistic Regression Analysis" she performed, or the actual results Dr. Rios obtained with respect to the 16 variables she identifies (*see* Ex. A at 3), stating only that "Dr. Rios can testify to the specific results of these statistical tests" (*id.* at 3, 4);

• a failure to disclose what standard Dr. Rios used in finding that there was no "statistically significant relationship" between certain pairs of the variables and that there were "statistically significant differences" between the Milner sample and the three other data samples she studied (*id.* at 4);

require expert reports "above and beyond what the Rules prescribe"); *Meredith*, 2011 WL 1466436, at *7 ("vague generalizations" of opinions insufficient to satisfy Rule 26(a)(2)(C)).

## II.     Defendants Should Be Compelled To Produce All Materials Considered by Defendants' Nine Other Non-Retained Experts

Defendants have failed to produce documents responsive to the Expert RFP for the nine other non-retained expert witnesses identified by Defendants in the June 9 and June 15 Disclosures.  In responding to Plaintiffs' request for a meet-and-confer concerning this omission, Defendants claimed that "Fed. R. Civ. P. 26(a)(2)(C), as the more specific provision, rather than Rule 34 establishes the disclosure obligations for non-report experts.  Otherwise, the different disclosure requirements of Rule 26 for report and non-report experts will be nullified. Consequently, your 'expert' RFPs do not apply to non-report experts." *See* Ex. G at 5.

This position, however, is flatly contradicted by prevailing law, which makes clear that the expert disclosure obligations set out in Rule 26 may be supplemented by Rule 34 document requests.  As the court explained in *Western Resources, Inc. v. Union Pacific Railroad Co.*:

> [T]he [c]ourt recognizes that expert testimony is often critical to the outcome of litigation and effective cross-examination may be impossible in the absence of adequate discovery through the use of depositions and requests for production of background documents.  Discovery of all material possessed by an expert relating to the matter at hand develops a record which prevents a sanitized presentation at trial, purged of less favorable opinions expressed at an earlier date.

No. 00-2043-CM, 2002 WL 1822428, at *4 (D. Kan., July 23, 2002); *see also Moses v. Halstead*, 236 F.R.D. 667, 676-77 (D. Kan. 2006) (holding that "[t]he enumeration in Rule 26(a) of items to be disclosed" does not preclude parties "from using traditional discovery methods to obtain further information regarding these matters . . . [R]equests for documents are not

---

• a failure to provide any basis for her opinion that "the Milner sample cannot be a simple random sample"; and

• in stating that Milner "did not perform the correct statistical tests," a failure to identify what tests Dr. Rios believes Dr. Milner should have performed.

objectionable merely because they seek documents outside the scope of the expert disclosures required by Rule 26(a)(2)(B)") (citations omitted); *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.*, 168 F.R.D. 61, 62 (D.N.M. 1996) (indicating that Rule 34 and Rule 26(a) are to be read in conjunction with each other in order to determine the appropriate document production.).

Accordingly, Plaintiffs request that the Court issue an order compelling the immediate production of all documents responsive to the Expert RFP in order to avoid further prejudice in connection with the upcoming depositions of Defendants' other non-retained experts.  If those documents have been previously produced by Defendants in response to prior document requests, Defendants should be required to identify them by reference to their Bates numbers or other document identifiers so that Plaintiffs can assemble the documents without further delay.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Motion be granted and that the Court issue an order (a) barring the testimony of Dr. Rios on the topics listed in the June 15 Disclosure, or, in the alternative, requiring immediate production of complete disclosures and all considered materials; (b) compelling production of documents responsive to Plaintiffs' Expert RFP for Defendants' nine other non-retained experts; (c) requiring payment of Plaintiffs' reasonable expenses in making this motion, including attorneys' fees; and (d) such other relief as the Court deems just and proper.


Dated:  June 24, 2011

RESPECTFULLY SUBMITTED:

/s/ Frederic Dorwart
FREDERIC DORWART (Bar No. 2436)
*(signed by Filing attorney with permission)*
/s/ Paul DeMuro
PAUL DEMURO (Bar No. 17605)

*(signed by Filing attorney with permission)*
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
Telephone: 918-583-9922
Facsimile: 918-583-8251
Email: FDorwart@fdlaw.com
         PDemuro@fdlaw.com

/s/ R. Thomas Seymour
R. THOMAS SEYMOUR (Bar No. 8099)
*(signed by Filing attorney with permission)*
/s/ Scott A. Graham
SCOTT A. GRAHAM (Bar No. 19817)
*(signed by Filing attorney with permission)*
SEYMOUR & GRAHAM, LLP
100 W. Fifth Street, Suite 550
Tulsa, Oklahoma 74103-4288
Telephone: 918-583-5791
Facsimile: 918-583-9251
Email: Rtseymour1@aol.com

/s/ Marcia Robinson Lowry
MARCIA ROBINSON LOWRY*(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Ira P. Lustbader
IRA P. LUSTBADER  *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ William Kapell
WILLIAM KAPELL *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Yasmin Grewal-Kok
YASMIN GREWAL-KOK *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Patrick S. Almonrode
PATRICK S. ALMONRODE *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Miriam F. Ingber
MIRIAM F. INGBER *(pro hac vice)*
s/ Laurence Drew Borten
LAURENCE DREW BORTEN *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Jason Moff
JASON MOFF *(pro hac vice)*
*(signed by Filing attorney with permission)*
PHILIP G. BARBER *(pro hac vice)*

16

*(signed by Filing attorney with permission)*
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, New York 10001
Telephone:  (212) 683-2210
Facsimile:  (212) 683-4015
Email:  mlowry@childrensrights.org


/s/ Phillip A. Geraci
PHILLIP A. GERACI *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ Angela Vicari
ANGELA VICARI *(pro hac vice)*
*(signed by Filing attorney with permission)*
/s/ John Cahalan
JOHN CAHALAN *(pro hac vice)*
*(signed by Filing attorney with permission)*
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Telephone:  (212) 836-8000
Email:  pageraci@kayescholer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of June, 2011, I served the foregoing document by electronic transmission upon the following persons:

DONALD M. BINGHAM
DONNA MARIE DE SIMONE
HOLLY HILLERMAN
KRISTOPHER EDWARD KOEPSEL
JOHN PATRICK MENSCHING
DAVID PAGE
STEPHANIE THEBAN
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
502 West Sixth Street
Tulsa, OK 74119-1010
don_bingham@riggsabney.com
ddesimone@riggsabney.com
hhillerman@riggsabney.com
kkoepsel@riggsabney.com
pmensching@riggsabney.com
dpage@riggsabney.com
stheban@riggsabney.com

ROBERT A. NANCE
MELVIN C. HALL
THOMAS ASKEW
SHARON GENTRY
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, PC
5801 N Broadway , Suite 101
Oklahoma City, OK 73118-7489
rnance@riggsabney.com
mhall@riggsabney.com
taskew@riggsabney.com
sgentry@riggsabney.com

JOSEPH W. STREALY
RICHARD W. FREEMAN, JR.
RICHARD A. RESETARITZ
Department of Human Services
P.O. Box 53025
Oklahoma City, OK 73152-3025
joseph.strealy@okdhs.org
richard.freeman@okdhs.org
richard.resetaritz@okdhs.org

CATHERINE ANN O'LEARY
Department of Human Services
Tulsa District Child Support Enforcement
P.O. Box 3643
Tulsa, OK 74101
catherine.oleary@okdhs.org

SCOTT D. BOUGHTON
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N.E. 21st Street
Oklahoma City, OK 73105
scott.boughton@oag.ok.gov

/s/ Miriam Ingber