# Exhibit
# E

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

D.G. by Next Friend G. Gail Stricklin, et al., for themselves and those similarly situated,

Plaintiff,

vs.

C. BRAD HENRY, in his official capacity as Governor of the State of Oklahoma, et al.,

Defendant.

Class Action

Civil Action No. 08-CV-074-GKF-FHM

JOHN GOAD, VOLUME I

April 19, 2011

The videotaped deposition of JOHN GOAD, taken before Maria S. Winn, CSR, RPR and CRR, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at the Hilton Orrington, 1710 Orrington Avenue, Evanston, Illinois, commencing at 9:04 a.m. on April 19, 2011.

A Yes, I do.

**Q What do you mean by that, sir?**

A By that, I mean if any reasonable expert were to look at the specific standards for -- and I am talking now about the standards for investigation in foster care.

**Q Sure.**

A Operational standards. There is lots of other, both COA and CWLA standards that have to do with staffing and management and things like that. And some of those are a little bit pie in the sky sometimes, but I'm talking about the operational standards.

I don't think any reasonable expert would look at them and say that a child welfare agency ought to condone functioning at a lower standard.

THE VIDEOGRAPHER: Counsel, I need to change.

MR. NANCE: Let's take a break.

THE VIDEOGRAPHER: Okay, this is the end of Tape Number 3 in the deposition of John Goad. The time is 1418, and we are off the record.

(WHEREUPON, a recess was taken, after which the following

agency ought not to do. And you know, almost every state's procedures reflect the same thing, reflect that that's what their procedures require.

MR. KAPELL: Also, Bob, I object to your reading snippets or excerpts regarding what the purposes of the CWLA standards are, and not presenting all of those snippets or all of what the CWLA states itself to be the purpose of the standards.

MR. NANCE: Counsel, the purpose of the standard section is in here in its entirety.

MR. KAPELL: Yes, but you're asking him about one or two snippets from this section. You haven't asked him about all of the purposes that are set forth in this section.

MR. NANCE: Well, if you want to call his attention to something different, you can do that on cross.

MR. KAPELL: Well, if you want an incomplete and misleading record, then you can proceed the way you're doing it.

BY MR. NANCE:

**Q Mr. Goad, the CWLA and the COA are private organizations, are they not?**

A Yes.

**Q They are not governmental organizations?**
A No.
**Q They do not have the power to make law?**
A No.
**Q Mr. Goad, in doing your report, of the children whose files you reviewed, how many were physically harmed after a maltreatment referral and investigation, and were harmed because the investigation was poorly conducted?**
A Well, I think, needless to say, I was not -- I didn't have that information available. What we did was a point in time review.
**Q Well, just based on the information you had --**
A There was a point in time. So we knew it happened in those investigations, with the exception of the fatality review, in which case all of them were.

But absent, or accepting and excluding the fatality review and the case review, we looked at a screen-out at the moment it was screened out, and that was it. We had no information chronologically that went after that.

However, it's safe to assume that in each one of the categories, if there were flawed