## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA.

| | | |
|---|---|---|
| D.G., by Next Friend G. Gail Stricklin, *et al.*, | ) | |
| for themselves and those similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **Class Action** |
| | ) | **Case No. 08-CV-074-GKF-FHM** |
| BRAD YARBROUGH, Chairman of the | ) | |
| Oklahoma Commission for Human Services, in | ) | |
| his official capacity, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ANNE SUBLETT

ANNE SUBLETT, an attorney admitted to practice in the Courts of the State of Oklahoma, declares under penalty of perjury as follows:

1.      I am a partner at the law firm of Conner & Winters, L.L.P. and have served as the Next Friend for Named Plaintiff G.C. in this litigation. I submit this declaration in support of Plaintiff Children's Motion for Award of Class Counsel Fees and Expenses.

2.      I was admitted to the Oklahoma bar in 1980 and have been practicing law at Conner & Winters for over 21 years. I began providing pro bono representation to children in abuse and neglect cases in 1994. In 2000, I co-founded Tulsa Lawyers for Children, Inc. ("TLC"), a non-profit organization that recruits and trains lawyers to provide pro bono legal representation to children in State Juvenile Court matters where the child is alleged to have been abused, neglected or abandoned. I served as President of TLC from 2000 to 2010 and currently serve on TLC's Board of Directors. Through my involvement with TLC and my pro bono work in Juvenile Court prior to TLC's formation, I have personally represented hundreds of children in

Oklahoma Juvenile Court.

3.      From 2007 to 2009, I served on the State legislative committee formed to re-write the Oklahoma Children's Code, and from 2002 to 2010, I served on the Oklahoma Supreme Court committee that wrote and subsequently revised jury instructions to be used in juvenile cases. From 1995 to 2010, I also served on the Board of Directors of Crossroads, a private agency that serves mentally ill adults. I currently serve on Crossroads' Advisory Board.

4.      In 2001, I was honored by the Oklahoma Institute for Child Advocacy as a "Friend of Children" for my work with abused and neglected children. That same year, I also received the Alma Wilson Award from the Oklahoma Bar Association for my legal work on behalf of Oklahoma children and the Mona Salyer Lambird Spotlight Award from the Oklahoma Bar Association for dedication to the advancement of women in the law. In 2003, I was given the "Attorney of the Year" award by Oklahoma's statewide organization of Court Appointed Special Advocates and in 2008, I was honored as a "Lion of the Bar" by the Council Oak Johnson Sontag Chapter of the American Inns of Court. I have also been selected as the honoree of this year's Tulsa County Barrister's Bowl in recognition of my pro bono work and service to the community.

5.      By 2007, it was my opinion, and the view of many other child advocates in Oklahoma, that there was a critical need for statewide institutional reform litigation on behalf of Oklahoma's foster children. There had been numerous task forces, studies, committees, reports and recommendations made about the Oklahoma child welfare system, but it was clear that these efforts were failing to improve the lives of Oklahoma's foster children.

6.      Oklahoma lacked a sufficiently cohesive or coordinated advocacy community or organization that could offer the necessary resources, child welfare expertise and experience in

complex federal constitutional litigation, or a willingness to initiate such an institutional reform action. With this shortcoming in mind, I actively sought out national groups with experience challenging statewide foster-care programs when I attended the three-day American Bar Association National Conference on Children and the Law in April 2007 at Harvard Law School. Barbara Sears, the current Executive Director of TLC and a Next Friend for Named Plaintiffs C.S. and K.T., joined me in those efforts. While they did not bear fruit, it is my understanding that Buddy Faye Foster, the longtime Executive Director of Oklahoma Lawyers for Children and another Next Friend in this case, brought Oklahoma's child welfare problems to the attention of Children's Rights, who ultimately agreed to serve as lead counsel in this action.

7.      I was aware that substantial resources were necessary to litigate such a class action suit. A case of this magnitude would require extensive investigation of the system to identify the underlying systemic problems that plagued the Oklahoma Department of Human Services ("OKDHS") and to locate appropriate named plaintiffs. Once such a complex and expansive lawsuit were filed, it would be extremely expensive to litigate due to the extensive discovery required and the need to front hundreds of thousands of dollars of costs, including non-reimbursable expert fees. To my knowledge, there were no attorneys in Oklahoma willing to risk bringing a class action reform suit of this magnitude on terms where lawyers are not paid on an ongoing basis as the work is being performed, substantial costs would have to be advanced, and the lawyers' ability to be compensated for their time and costs is entirely contingent upon prevailing in the action.

8.      Litigating a class action lawsuit to reform Oklahoma's foster care system also required extensive expertise in the field of child welfare, including considerable knowledge of operations of foster care systems and the common systemic problems they face. Beyond this, it

was necessary for attorneys to have extensive knowledge concerning the federal constitutional and statutory rights of foster children and developments and trends in these areas nationally and in the Tenth Circuit, as well as detailed knowledge of state child welfare statutes and administrative regulations.

9.      In addition, bringing a class action child welfare reform suit required extensive experience in complex federal class action litigation. I knew that such a case would be extremely large due to the number of children in OKDHS's foster care custody, and was likely to involve substantial motion practice and discovery, as well as complicated strategic decision-making.

10.     Law firms in this State would also have found this suit highly undesirable in light of the potential conflicts of interest that litigation would present. It would be extremely difficult for any large law firm in this State to undertake litigation against the Governor, the Director of OKDHS and the Commissioners on the State Commission for Human Services without potential conflicts of interest and political difficulties arising from such a suit. The conflicts problem is perhaps best demonstrated by the fact that two of the law firms originally retained to represent Plaintiff Children in this case -- the Oklahoma City firm of Day, Edwards, Propester & Christensen, P.C. and the Tulsa firm of Doerner, Saunders, Daniel & Anderson, LLP -- wound up resigning due to conflicts after the suit had been filed.

11.     Given the significant investment of staff and financial resources required to prosecute this action, the expertise in child welfare and complex federal constitutional and class action law this suit demanded, the contingent nature of any potential fee and expense recovery, and the undesirability of the litigation, I know of no law firm or public interest group in Oklahoma that would have been willing or able to bring and maintain this suit. Without the involvement of the attorneys at Children's Rights, it is my opinion that this lawsuit would not

4

5

and could not have been brought. Neither I nor my firm could or would have served as lead counsel on the suit, despite my extensive experience in juvenile law, given the highly specialized legal knowledge and experience, as well as the substantial up-front financial resources, required for such an effort, as well as the complex conflict of interest issues raised by the action.

12.     I have carefully reviewed the relief obtained under the Settlement Agreement in this action. In my opinion, this relief is extraordinary and by far represents the most fundamental, beneficial steps taken to reform Oklahoma's foster care system that has been achieved to date.

Dated: Tulsa, Oklahoma
       May 21, 2012

_____
Anne Sublett

## CERTIFICATE OF SERVICE

I hereby certify that on the18th day of June, 2012, I served the foregoing document by electronic transmission upon the following persons:

DONALD M. BINGHAM
DONNA MARIE DE SIMONE
HOLLY HILLERMAN
KRISTOPHER EDWARD KOEPSEL
JOHN PATRICK MENSCHING
DAVID PAGE
STEPHANIE THEBAN
Riggs, Abney, Neal, Turpen,
Orbison, & Lewis, PC
502 West Sixth Street
Tulsa, OK 74119-1010
don_bingham@riggsabney.com
ddesimone@riggsabney.com
hhillerman@riggsabney.com
kkoepsel@riggsabney.com
pmensching@riggsabney.com
dpage@riggsabney.com
stheban@riggsabney.com

ROBERT A. NANCE
MELVIN C. HALL
THOMAS ASKEW
SHARON GENTRY
Riggs, Abney, Neal, Turpen,
Orbison, & Lewis, PC
5801 N Broadway , Suite 101
Oklahoma City, OK 73118-7489
rnance@riggsabney.com
mhall@riggsabney.com
taskew@riggsabney.com
sgentry@riggsabney.com

JOSEPH W. STREALY
RICHARD W. FREEMAN, JR.
RICHARD A. RESETARITZ
Department of Human Services
P.O. Box 53025
Oklahoma City, OK 73152-3025
joseph.strealy@okdhs.org
richard.freeman@okdhs.org
richard.resetaritz@okdhs.org

CATHERINE ANN O'LEARY
Department of Human Services
Tulsa District Child Support Enforcement
P.O. Box 3643
Tulsa, OK 74101
catherine.oleary@okdhs.org

SCOTT D. BOUGHTON
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N.E. 21st Street
Oklahoma City, OK 73105
scott.boughton@oag.ok.gov

/s/ Marcia Robinson Lowry
MARCIA ROBINSON LOWRY