## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| D.G. by Next Friend G. GAIL STRICKLIN, et al., for themselves and those similarly situated, | |
| Plaintiffs, | |
| vs. | Case No.08-CV-074-GKF-FHM |
| BRAD YARBROUGH, Chairman of the Oklahoma Commission for Human Services, in his official capacity, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Plaintiffs' Motion for Award of Class Counsel Fees and Expenses, [Dkt. 790], has been referred to the undersigned United States Magistrate Judge for report and recommendation. The matter has been fully briefed and an evidentiary hearing was held October 30 to November 1, 2012.

Plaintiffs seek an award of reasonable attorneys fees under 42 U.S.C. § 1988 and ¶ 1.3 of the parties' Settlement Agreement. [Dkt. 770-1, p. 3]. Plaintiffs request an award of $8,345,588 for 36,188 billable hours and $1,174,831 in reimbursable expenses for a total of $9,520,419. Defendants argue that neither the hourly rates nor the number of hours are reasonable and assert that the court should either disallow an award entirely or award an amount between $2.6 and $3.7 million. The undersigned addresses each category of Defendants' objection in turn below, and makes a recommendation for a fee award based on the applicable standard.

**I.**
**Standard for Attorney Fee Awards**

The undersigned has reviewed the parties' submissions and considered their arguments to determine whether the number of hours and rate are reasonable and well supported as required by Tenth Circuit authority. *Case v. Unified School District No. 233, Johnson County, Kansas,* 157 F.3d 1243,1250 (10th Cir. 1998) citing *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983) (The number of hours requested must be proven "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks"); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1202 (10th Cir. 1998) (the application for a fee award should reflect the exercise of "billing judgment" with respect to the number of hours claimed, excluding from the fee request hours that are redundant, excessive, or otherwise unnecessary);*Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1084))("[a] reasonable rate is the prevailing market rate in the relevant community"); *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir. 1994) (the relevant market rate is not necessarily the price a party's lawyer charged to prosecute the case, but "the price that is customarily paid in the community for services like those involved in the case at hand").

**II.**
**Denial or Reduction Based on Excessive Nature of Fee Request**

Defendants argue that Plaintiffs' fee request is grossly inflated and improperly documented and that as a result, denial or reduction of the fee request is justified. [Dkt. 834, p. 36]. Defendants seek a thirty to fifty percent reduction on this basis.

The undersigned has addressed the lack of specificity and documentation for claimed fees and expenses and recommends that the Court decline to take an overall deduction based on the Defendants' claim that the fee request is "excessive."

**III.**
**Settlement Agreement as Limitation on Fees**

In a civil rights case like the present case, 42 U.S.C. § 1988 provides that the court in its discretion may award the prevailing party a reasonable attorney's fee. Defendants contend that by entering into the Settlement Agreement, Plaintiffs have waived their right to seek fees under §1988 and therefore the court's only authority to award fees in this case arises under the Settlement Agreement. Defendants assert that under the Settlement Agreement Plaintiffs may only recover fees and expenses for the sixteen specifically named Class Counsel. If the court accepts Defendants' argument that recovery is limited by the Settlement Agreement, the award will be reduced by at least $2.4 million.

The entire basis for Defendants' argument is contained in the following provisions of the Settlement Agreement:

> 1.1 **Class Counsel** shall mean Angela R. Vicari, Frederic Dorwart, Ira Lustbader, John S. Cahalan, Marcia R. Lowry, Paul DeMuro, Phillip A. Geraci, R. Thomas Seymour, Scott A. Graham, William Kapell, Miriam F. Ingber, Patrick S. Almonrode, Jodi K. Miller, Laurence D. Borten, Philip G. Barber, and Sarah T. Russo.

> 1.3 **Class Counsel Fees and Expenses** shall mean reasonable fees and expenses of Class Counsel in an amount to be determined by the Court, provided the services and expenses of Frederic Dorwart Lawyers have been and will be provided pro bono for the benefit of the Plaintiff Class. The Court shall retain jurisdiction to make this determination. The Named Plaintiffs and Next Friends shall not seek or be awarded compensation in return for their role in the Class Action Litigation. Settling Defendant stipulates that Class Counsel is entitled to Class Counsel Fees and Expenses but reserves the right to dispute the amount of Class Counsel Fees and Expenses.

[Dkt. 770-1, p. 3; Dkt. 834-2, p. 2].

The undersigned rejects Defendants' argument that the provisions of the Settlement Agreement waive Plaintiffs' right to seek fees under §1988. Paragraph 1.3 waives the fees and expenses of Frederic Dorwart Lawyers and compensation for the named Plaintiffs and Next Friends, but there is no mention of any waiver of fees under §1988 for attorneys not listed in paragraph 1.2. If the Settlement Agreement were the only basis for a fee award, the language of paragraph 1.3 would not serve as an independent basis to award fees to any attorneys not listed in paragraph 1.2. However, the language of paragraph 1.3 in no way limits Plaintiffs' right to seek fees under §1988 as §1988 is not mentioned.

The undersigned recommends that fees and expenses be awarded under 42 U.S.C. § 1988 without regard to the language of the Settlement Agreement. The undersigned has analyzed the fee application and objection herein under §1988.

**IV.**
**Limitation on Award for Dismissed Claims**

Defendants argue that the fee award should be reduced because only one of the five claims asserted in the Complaint survived dismissal and summary judgment. Defendants cited no authority to support this argument. [Dkt. 834, pp. 15-17].

The Tenth Circuit has made it clear that in making an award of attorneys fees in civil rights cases, the district court does not evaluate individual claims as though they were discrete and severable. When the facts supporting the successful claims are "one bundle of proof" with the unsuccessful ones, lack of success on some of the interrelated claims should not be used as the basis for reducing a fee award. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998); *see also Hampton v. Dillard*, 247 F.3d 1091, 1120 (10th Cir. 2001)(same).

In the present case all of the claims depended on the same facts. There have been no depositions or other discovery identified that did not relate to the substantive due process claim which was the one surviving claim scheduled for trial when the case settled. The undersigned finds that it is not appropriate in this case to make a percentage reduction in the fee award for "failure to prevail on 4 substantive claims" or for "only limited and partial success" as requested by Defendants. [Dkt. 834-1].

**V.**
**Reduction of Fee for Contact with Steven Dow**

Defendants seek a percentage reduction in the overall fee award for what Defendants claim was unethical conduct by Plaintiffs' attorneys. According to Defendants, there were "multiple instances of Plaintiffs' attorneys' undisputed, unauthorized contact with

a represented Defendant regarding this litigation." [Dkt. 834, p. 35]. Defendants assert that Plaintiffs' attorneys Lowry and Dorwart had contact with Steven Dow, outside of the presence of Department of Human Services counsel while Mr. Dow was a member of the Oklahoma Commission for Human Services which justifies a significant reduction in Plaintiffs' fee award.

Defendants also raised this issue prior to the hearing and requested discovery of all contacts Plaintiffs had with Mr. Dow or with persons listed as "confidential source" in Plaintiffs' time sheets. [Dkt. 804]. Plaintiffs submitted a list of the names of the "confidential sources" for *in camera* review. Mr. Dow is not listed as being a "confidential source." Furthermore, with the exception of one individual identified as a supervisor, the sources were case workers or other front line employees.

At the hearing, the uncontroverted testimony of attorney Dorwart established that Mr. Dow and attorney Dorwart are long-time acquaintances. Attorney Dorwart mailed Mr. Dow a packet of materials that contained publicly filed documents concerning this case. There were no substantive conversations between the two men regarding this case. Attorney Lowry testified that her conversations with Mr. Dow consisted of social pleasantries. Defendants did not call Mr. Dow to testify at the hearing. The undersigned finds that the evidence did not establish that there were any unauthorized discussions between Plaintiffs' attorneys and Mr. Dow regarding this litigation. There is, therefore, no basis for a reduction in the fee award for unethical conduct with respect to Mr. Dow, or otherwise.

**VI.**
**Hourly Rate**

Generally an hourly rate for an attorney fee award is determined by what attorneys of comparable skill and experience practicing in the area where the litigation occurs charge for their time.  In unusual circumstances the rate may be determined by reference to rates charged in another location.  The rates for paralegals and interns are determined in the same way.  In this case, the parties agree that local rates should be applied to all of the attorneys, paralegals and interns with the exception of attorney Lowry.  For attorney Lowry, Plaintiffs seek a New York City rate of $700 per hour.

Although Plaintiffs have limited their fee request to local rates for all of the attorneys except attorney Lowry, Plaintiffs also seek an hourly rate and expenses for the time non-local attorneys spent traveling from their offices in New York City.  Defendants contend such travel time and expenses are not recoverable because Plaintiffs have not established that non-local counsel were necessary in this case.

The undersigned is persuaded that, while there are attorneys in Oklahoma who could competently handle this case, economic considerations make it unlikely that any firm would take the case.  The case required a substantial commitment of time and expense. There was a serious risk that the Plaintiffs would not be successful.  Furthermore, even if the Plaintiffs won, all the attorneys could hope to recover economically would be an hourly rate for their time and their expenses.  Moreover, even if an Oklahoma firm did take the case, it would be highly advisable to associate with a firm with prior experience in this specialized area of the law and social science.  The undersigned therefore concludes that

7

Plaintiffs have established the necessity for some involvement by non-local counsel. As a result, the undersigned recommends payment of some travel fees and expenses.

There are, however, concerns about the failure of Plaintiffs' attorneys to take steps to limit travel fees and expenses. The practice of Plaintiffs' firm, Children's Rights, involves litigating in various states. Although Children's Rights maintains its office in New York City, Children's Rights attorneys do not prosecute cases in New York City. Further, Children's Rights does not engage local attorneys to perform substantial work on their cases. Instead, Children's Rights performs the majority of the work which necessitates logging a significant number of hours of travel time. The substantive work that local counsel did perform in this case demonstrates that a substantial amount of substantive work could be competently and efficiently handled by local counsel. Greater use of local counsel would have significantly limited the need to have multiple Children's Rights attorneys travel to depositions, meetings, and hearings. Thus, while some involvement of non-local counsel was reasonable, the use of non-local attorneys exceeded what was reasonable. In balancing these factors, the undersigned recommends that Plaintiffs be paid for their travel time at a rate of $50 per hour. The undersigned also recommends that the fee award include reasonable travel expenses as further discussed herein.

Plaintiffs seek a rate of $700 per hour for attorney Lowry. That rate is supposed to reflect a New York City rate for an attorney with attorney Lowry's experience. There is little evidence in the record concerning the market rate in New York City. More importantly, there is no evidence that attorney Lowry practices in the New York City market. All of attorney Lowry's practice is through Children's Rights which litigates in states outside of New York City. Certainly, attorney Lowry has developed expertise in this type of litigation.

Defendants have recognized that expertise in that Defendants' expert William R. Grimm suggests that attorney Lowry be paid $450 per hour.  In light of the undersigned's conclusion that involvement of non-local counsel with expertise was necessary, and attorney Lowry's acknowledged expertise, the undersigned finds that Defendants' expert's suggestion that attorney Lowry be paid $450 per hour is reasonable.

In determining the rates in this case, the undersigned has considered: the nature, facts, and circumstances of the case; the fee application and supporting materials; the evidence of rates actually charged in the case; the opinions of the parties' expert witnesses; the survey of local rates; prior decisions in attorney fee disputes; and the undersigned's general knowledge of the rates in the community.  One of the first pieces of information the court usually considers in determining a local hourly rate is what the clients actually paid for their attorney's time.  However, in this case that information is not helpful.  Plaintiffs' lead attorneys do not practice law outside of their work with Children's Rights and the Children's Rights clients do not pay for the attorneys' services.  Defendants' lead attorneys provided representation at a below market rate.

The usual rates for Plaintiffs' local counsel are between $275 and $425 per hour. The rates for the attorneys who primarily handled the settlement negotiations and the attorney fee application for Defendants is between $200 and $300 per hour.

The parties' expert witnesses who testified as to their opinions about reasonable rates charged between $325 and $400 per hour for their work as experts in this case.  Prior decisions in this district have found $250 per hour to be the local rate for comparable litigation.  In 2004 Magistrate Judge Cleary recommended $250 per hour to be the prevailing rate for a competent lawyer in a take or pay case.  Judge Holmes affirmed and

9

noted he was unaware of any attorney fee award in the Northern District of Oklahoma with a rate above $250. *Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246, 1249-50 (N.D. Okla. 2004). In 2007 Magistrate Judge Joyner found a $250 per hour rate appropriate for lawyers of the highest level of competence and experience in a gender discrimination case. *D.H. v. Ponca City Ind. Sch. Dist. No. 71,* 2007 WL 2670105 (N.D. Okla. 2007). In 2012 Magistrate Judge Wilson and Chief Judge Frizzell approved a $250 per hour rate in a health care antitrust case. *Cohlmia v. St. John Medical Center*, Case No. 05-CV-384-GKF-TLW (N.D. Okla.), docket # 536 January 20, 2012, docket # 574 October 26, 2012.

In the present case Plaintiffs contend the prevailing local hourly rate is between $175 and $375 for the attorneys working on this case. Defendants contend the range is between $165 and $300. The following chart, taken primarily from the report of Defendants' expert William R. Grimm, sets forth relevant information and the parties' proposed hourly rate for the working hours for each attorney.

| Attorney Name | Years at CR[1] | General Legal Exp | Work Hours | Travel Hours[2] | % of case total hours | Defendant's Work Rate | Plaintiff's Work Rate |
|---|---|---|---|---|---|---|---|
| Kapell | 2008 | 27 years | 5624.39 | 653.08 | 23.13% | $300 | $375 |
| Grewal-Kok | 2007 | 12 years | 3381.56 | 284.26 | 13.51% | $245 | $250 |
| Lowry | 1995 | 44 years | 1118.02 | 333.03 | 5.35% | $450 | $700 |
| Frei-Pearson | 2006 | 8 years | 3256.36 | 410.82 | 13.51% | $225 | $225 |
| Ingber | 2010 | 8 years | 2740.68 | 625.83 | 11.3% | 200 | 200 |
| Almonrode | 2009 | 8 years | 1571.5 | 103.95 | 6.17% | 200 | 200 |

---

[1] The time at Children's Rights (CR) is significant in that it indicates experience directly relevant to the type of work performed in this case.

[2] Rounding the requested hours results in a total number of travel hours of 2,790, which is the number of hours the undersigned used to calculate the recommendation herein.

10

| Attorney Name | Years at CR | General Legal Exp | Work Hours | Travel Hours | % of case total hours | Defendant's Work Rate | Plaintiff's Work Rate |
|---|---|---|---|---|---|---|---|
| Russo | 2010 | 2 years | 1664.54 | 126.85 | 6.6% | 165 | 175 |
| Lustbader | 1999 | 20 years | 1348.8 | 232.86 | 5.83% | 265 | 325 |
| Moff | 2011 | 6 years | 1203.27 | 47.92 | 4.61% | 175 | 200 |
| Wiltsek | 2007 | 10 years | 1088.61 | 49.75 | 4.19% | 235 | 275 |
| Borton | 2009 | 9 years | 472.6 | 76.82 | 2.02% | 225 | 225 |
| Barber | 2011 | 30 years | 166.53 | 15 | .67% | 300 | 375 |
| Miller | 2010 | 12 years | 210.43 | 13.5 | .83% | 235 | 250 |
| Dixon | 2009 | 25 years | 96.72 | 76.32 | .64% | 250 | 375 |
| Nili | 2010 | 5 years | 150 | 0 | .55% | 175 | 195 |
| Cohen | 2011 | 2 years | 139.19 | 38.25 | .65% | 165 | 175 |
| Thompson | 1988 | 18 years | 61.43 | 0 | .23% | 250 | 325 |
| Lambiase | 1999 | 25 years | 48.16 | 10.34 | .21% | 250 | 375 |

The parties' proposed rates result in a difference of $932,196.  Most of the difference is the result of the different rates proposed for attorney Kapell ($375 vs. $300 equals $421,829) and attorney Lowry ($700 vs. $450 equals $279,500) while the difference in rates for the remaining attorneys accounts for $230,867.  Plaintiffs seek a rate of $325 per hour or more for seven attorneys who worked on this case.

Based on the nature of the case, the evidence concerning local rates, and the passage of time since the court approved a rate of $250 per hour, the undersigned finds that the prevailing local rate for this type of case is up to $300 per hour.  The undersigned further finds that Defendants' expert report on the rates for the individual attorneys is well supported and accurately reflects prevailing local rates.  The undersigned recommends that those rates, as reflected in the foregoing chart, be applied to the hours for attorneys.

<u>Paralegal and Intern Hourly Rate</u>

Plaintiffs seek reimbursement of $904,718 for approximately 9,047 hours of paralegal and intern time at $100 per hour.  Defendants' expert, William R. Grimm, recommended a local rate of $60-75 per hour for paralegals and interns, for an average of about $70 per hour.[3]  Plaintiffs provided no information about the qualifications, skill level, and experience of the paralegals and interns to justify a rate of $100 per hour.  The undersigned recommends that the rate of $70 per hour be applied to the time billed by paralegals and interns.

**VII.**
**Number of Hours**

<u>Attorney Time</u>

The number of hours requested must be proven "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Case v. Unified School District No. 233, Johnson County, Kansas,* 157 F.3d 1243,1250 (10th Cir. 1998) citing *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). Not all hours expended in litigation are normally billed to a client.  An applicant for a fee award should exercise "billing judgment" with respect to the number of hours claimed, excluding from the fee request hours that are redundant, excessive, or otherwise unnecessary.  The district court has a corresponding obligation to exclude hours not reasonably expended.  However, the district court need not identify and justify every hour

---

[3]  Mr. Grimm assigned rates to each paralegal or intern with the result that his suggestion for paralegal/intern work is $639,199, which divided by the number of hours (9047) results in an average rate of $70 per hour.

allowed or disallowed because to do so would essentially convert a fee request into a second major litigation. *Malloy*, 73 F.3d at 1018; *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1202 (10th Cir. 1998).

Plaintiffs exercised billing judgment and eliminated 3,634 hours plus all hours for attorneys who billed fewer than 50 hours on the case were eliminated from the fee request.[4]  In addition, no attorneys fees are being sought for the services rendered by the Kaye Scholer firm, the Frederick Dorwart Lawyers, or R. Thomas Seymour.  Regardless of the significant reduction to the award request resulting from the admirable pro bono contributions and billing judgment, the billing entries submitted by Plaintiffs for payment of a fee award must none-the-less meet the standard set out above.

Defendants assert that many of the Children's Rights time entries do not meet the standard of revealing how the time was allocated to specific tasks and that the billing entries do not reveal the exercise of billing judgment.  Defendants state the terms "source" or "sources" are inserted into the description for over 840 entries representing $198,414.75 in fees.  According to Defendants, these entries are too vague to evaluate whether the time spent was reasonable.  Defendants identified approximately 1900 billing entries for Attorney Kapell that contain the description "electronic mail" and little other detail about the substance of the work performed.  [Dkt. 834-8].  Defendants identified $36,066.34 in attorney time which they argue is not recoverable as the time was devoted to non-substantive tasks such as organizing and training of attorneys.  [Dkt. 834, p. 18; 834-7].

---

[4]  A fee for Attorney Lambiase is included in the request, Attorney Lambiase has 48 work hours and 10 travel hours in the case.

Defendants did not identify the specific entries which contain the references to "source."  Children's Rights submitted 2500 pages of billing entries in support of the fee request.  The undersigned did not attempt to locate the "source" entries to determine whether the entries containing a reference to "source" were otherwise adequately descriptive of the task performed.  The undersigned has noted, however, that many of the Children's Rights time entries do not contain adequate descriptions as required to support a fee request.

Defendants excerpted entries from the billing statements that contain Attorney Kapell's references to "electronic mail," into an exhibit, however Defendants did not total the number of hours or dollars represented by these entries.  The undersigned did not attempt to quantify those entries, but observes that for the most part, the entries do not detail the work performed.  A review of the exhibit detailing the non-substantive entries reveals that while much of the time identified is non-compensable office administration time, some of the time pertains to the preparation of this fee request and is compensable.[5]

Defendants argue for an overall percentage reduction in the fee award of thirty to fifty percent for several categories of requested reductions, including the ones outlined above.  The requested reductions include reductions the undersigned has recommended be rejected such as the failure to succeed on all claims and the excessive nature of the fee request.  Accordingly, Defendants' requested thirty to fifty percent reduction should be rejected.

---

[5]  The undersigned has not recommended elimination of this category of time.  As a result, the fee award includes some time for the preparation of the fee request.  These hours should not re-appear in an application for fees related to the prosecution of the instant motion.

The undersigned has not studied every one of the 2500 pages of billing entries. However, review of the billing statements reveals that many of the entries contain cursory descriptions of the tasks completed and it appears that multiple attorneys worked on the same tasks.   In section X herein, the undersigned has found a serious lack of billing judgment with respect to Plaintiffs' expenses.   That lack of billing judgment has also affected the undersigned's view of the number of hours claimed.  In addition, the Plaintiffs' expert, Joel Wohlgemuth, testified that he recommends a reduction of seven and a half percent "just to account for any duplication of effort, research, those types of things that we always look for in a billing judgment that may not have been accounted for in the billings that are presented in support of the fee application."  [Dkt. 834-3, pp. 2-3].   The undersigned finds that some reduction in the number of hours is reasonable.   The reduction recommended by attorney Wohlgemuth is reasonable and therefore the undersigned recommends that the attorney hours be reduced by seven and a half percent.

<u>Paralegal Hours</u>

Defendants argue that many of the entries for paralegal time include secretarial tasks that are not separately billable to a client.  Defendants have identified $20,873.08 in fees which at Plaintiffs' requested paralegal rate of $100 per hour is about 209 hours. [Dkt. 834, pp. 20-21; 834-9].  The undersigned finds that Defendants' objections are supported, and therefore recommends that 209 hours be eliminated from the 9047 hours of paralegal and intern time in the fee request, leaving 8,838 hours to be compensated at the rate of $70 per hour for a total of $618,660.   Again, because of the lack of billing judgment exercised, the undersigned recommends that a seven and a half percent reduction also

be applied to the paralegal and intern time, which results in a reasonable award of $572,260 for paralegal and intern time.

## VIII.
## Fee Award Recommendation

The undersigned has arrived at the attorney fee figure by applying the hourly rates recommended herein to the requested hours and reducing the resulting total fee request by seven and a half percent.  That yields a different and probably higher reduction than reducing the hours for each attorney and then applying the hourly rate.  The undersigned finds that reducing the overall award by the percentage is justified by the lack of billing judgment found in the fee request and in recognition of the fact that it is Plaintiffs' burden to prove the necessity and reasonableness of their fee request.  The rates and hours for each attorney appear in the following chart.

| Attorney | Work Hours | Hourly Rate | Work Fee | Travel Hours | Travel Rate | Travel Fee |
|---|---|---|---|---|---|---|
| Kapell | 5624 | $300 | $1,687,200 | 653 | $50 | $32,650 |
| Grewall-Kok | 3381 | $245 | $828,345 | 284 | $50 | $14,200 |
| Lowry | 1118 | $450 | $503,100 | 333 | $50 | $16,650 |
| Frei-Pearson | 3256 | $225 | $732,600 | 410 | $50 | $20,500 |
| Ingber | 2740 | $200 | $548,000 | 325 | $50 | $16,250 |
| Almonrode | 1571 | $200 | $314,200 | 103 | $50 | $5,150 |
| Russo | 1664 | $165 | $274,560 | 126 | $50 | $6,300 |
| Lustbader | 1348 | $265 | $357,220 | 232 | $50 | $11,600 |
| Moff | 1203 | $175 | $210,525 | 47 | $50 | $2,350 |
| Wiltsek | 1088 | $235 | $255,680 | 49 | $50 | $2,450 |
| Borton | 472 | $225 | $106,200 | 76 | $50 | $3,800 |
| Barber | 166 | $300 | $49,800 | 15 | $50 | $750 |
| Miller | 210 | $235 | $49,350 | 13 | $50 | $650 |
| Dixon | 96 | $250 | $24,000 | 76 | $50 | $3,800 |
| Nili | 150 | $175 | $26,250 | 0 | $50 | $0 |
| Cohen | 139 | $165 | $22,935 | 38 | $50 | $1,900 |
| Thompson | 61 | $250 | $15,250 | 0 | $50 | $0 |
| Lambiase | 48 | $250 | $12,000 | 10 | $50 | $500 |
| **SUBTOTALS** | **24335** | | **$6,017,215** | **2790** | | **$139,500** |

16

| | | |
|---|---|---|
| 7.5% reduction | $421,205 | |
| **Fee Recommendation** | **$5,596,010** | **$139,500** |

Based on the foregoing, the undersigned recommends that: attorney fees be awarded in the amount of $5,596,010; paralegal/intern fees be awarded in the amount of $572,260; and travel fees be awarded in the amount of $139,500.

## IX.
## Travel Expenses

Plaintiffs seek Travel Expenses of $351,729.87.  Defendants strenuously argue that this category of expense should be disallowed for the reason that the need to employ out-of-state counsel was not demonstrated and for the further reason that invoices supporting those expenses were not submitted.  The need for non-local counsel has been addressed. The undersigned has made recommendations below for deductions for unreasonable expenses and for non-compensable travel expenses to be eliminated from the fee award.

## X.
## Improper and Insufficiently Documented Expenses

Expenses are recoverable as part of a fee award if they are "incidental and necessary" in furnishing representation.  *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983).  Plaintiffs must show that the expenses they request are (1) reasonable, and (2) not absorbed as part of law firm overhead, but would be itemized and billed to a private client.

17

*Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995).  Plaintiffs seek over $1.1 million in what they assert are reimbursable expenses.

In response to Plaintiffs' motion for a fee award, Defendants objected to many of the requested expenses on the basis that Plaintiff provided an insufficient explanation of the necessity or the reasonableness of the expense.  Defendants seek a reduction of $502,442.41 for improper and insufficiently documented expenses.

Plaintiffs' response to Defendants' objections was disappointing.  Despite Plaintiffs' obligation to "prove and establish the reasonableness of each dollar . . . above zero," for the most part, Plaintiffs made no attempt to meet Defendants' objections or to justify their request for reimbursement for out-of-pocket expenses.

The undersigned has recommended reduction or elimination of many of the claimed expense items because Plaintiffs did not establish the reasonableness of the expense.  Plaintiffs' failure to specifically address Defendants' objections has hampered the court's task of justifying the recommendations made herein.  In making reductions, the undersigned has been guided by the principle that where the billing statements lack sufficient detail concerning the out of pocket expenses to enable Defendant to formulate a rational objection to them or for the court to determine that the expenditures were reasonable it would be unfair to award the out-of-pocket expenses.  See *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (reiterating that it is the burden of

18

the party seeking a fee award to justify the reasonableness of the request, not the court's burden to justify each deduction).

The recommendations for reductions have not been made with anything approaching the precision of an accounting document.  The recommended reduction amounts have been liberally rounded upward to account for both the absence of any attempted justification by Plaintiffs and to account for the lack of billing judgment.  To the extent that this approach has resulted in any inaccuracy, "plaintiffs have only themselves to blame" for any omission or computational error by the undersigned because as one court observed, dumping billing statements on the court is not an adequate means of supporting the expenses component of an attorney fee request.  *See United Phosphorus, Ltd., v. Midland Fumigant, Inc.*, 21 F.Supp.2d 1255, 1262 (D. Kan. 1998).  Plaintiffs should not be heard to complain about the imprecision of the reductions recommended.

Defendants state that in the exhibits found at Dkt. 792-2 and 791-4 most of the entries do not supply sufficient detail for Defendant or the court to ascertain whether the expense is necessary or reasonable.  The specific items Defendants point out as having insufficient support are:  "expert production" of $7,911.79, [Dkt. 791-4, p. 5];[6] "expert deposition preparation" of $68,571.18, [Dkt. 791-4, p. 6]; "litigation support" of $16,450.13,[7]

---

[6] Citations to the record refer to the page number assigned by the CM-ECF docketing system rather than the page number printed on the exhibit, accordingly the citations in this document may differ from the citation to the same page by the parties.

[7] This figure includes $7,911.79 for "expert production."

[Dkt. 791-4, p. 5]; and Kaye Scholer Law Firm's "litigation support" of $191,176.95, [792-2, p. 32].  Defendants identified the following as expenses which are not recoverable because they would not likely be billed to a client:  taxies for attorneys for daily commuter travel; non-travel working meals; conference meals; corporate filing and searches; obtaining articles and publications; temporary attorneys; and subpoenas.  Defendants' objections to these expenses are well taken.  The billing records provide no clue as to what is included within the designations of "expert production," "expert deposition preparation," and Children's Rights "litigation support."  Plaintiffs did not address Defendants' objections in their briefing or at the hearing.  Since Plaintiffs made no attempt to justify these expenses, the undersigned finds that they have not met the burden of demonstrating that the expenses are necessary or reasonable.  As a result, the undersigned recommends that expert deposition preparation of $65,571.18 and litigation support of $16,450.13 requested by Children's Rights be deducted from the award.

Overall, the undersigned finds that the request for expenses demonstrates a serious lack of billing judgment as Plaintiffs included entire categories of clearly unrecoverable commuting expenses and non-travel meals in their request for reimbursement.  Children's Rights' request includes "conference meals of $546.69, [Dkt. 791-4, pp. 13-14], and working meals of $6,576.22, *Id.* at 17-23, which are not appropriate expenses and should be eliminated from the award.  In addition, the undersigned has identified a number of travel meals for multiple people or meals with rather large amounts.  Given the lack of

20

billing judgment with respect to meals, the undersigned recommends that $3,000 be deducted from the award for those instances where it appears that Children's Rights picked up a meal tab for several diners, or where the amount appears extravagant.

Children's Rights requests $50,121.87 for "other transportation." *Id*. at 95.  Many of those entries are for taxis for "working late."  *Id*. 69-95.  No authority has been offered for an award of expenses incurred for local travel for lawyers to get to and from work.  Some of the entries in the "other travel" category of Children's Rights expense request are for taxis or rental cars appear to be related to travel in Oklahoma for this case.  Although some of the expenses may be appropriate, given the liberal inclusion of a vast number of clearly inappropriate charges for local travel in New York City, the undersigned declines to pick through the expenses to identify which ones may be appropriate.  The undersigned recommends that the entire expense of $50,121.87 be eliminated from the award.

Children's Rights requests $203,886.95 for "plane-amtrak." *Id*. at 69.  Since the undersigned has determined elsewhere in this report and recommendation that travel was necessary to the representation of Plaintiffs in this case, travel expenses are recoverable.  However, there are numerous charges for "travel agent fee."  The undersigned is of the opinion that travel agent fees were incurred as a convenience to Children's Rights and were not strictly necessary to the representation of Plaintiffs.  Accordingly, the undersigned recommends that $2100 in travel agent fees be deducted from the award.  Some of the

airline charges are for "cancelled flights."  The undersigned finds that these charges should

be eliminated from the award in the amount of $7,050.

There are also a number of Amtrak charges.  Since Children's Rights has otherwise

included local travel in its expense request, and it is highly unlikely that Plaintiffs' attorneys

traveled by train to Oklahoma, the undersigned is of the opinion that Amtrak charges were

incurred for local travel.  The undersigned recommends that $825 be deducted from the

request.

The Kaye Scholer law firm provided some representation pro bono but incurred

expenses on Plaintiffs' behalf for which Plaintiffs seek reimbursement.  The Kay Scholer

expense request contains many entries in the out-of-town transportation category for taxis

and car service for in-town travel to and from the airport.  Other entries have non-specific

designations such as "taxi to hotel while on business trip."  These expenses of $1,711.43,

[Dkt. 792-2, p. 9], together with "local transportation" of $62.75, *Id*. at 10; parking expenses

of $84, *Id*.; "overtime transportation" of $380.43, *Id.* at 11; other travel and living expense

of $9.00 (this is an in-town taxi ride), *Id*. at 16; "conference meals" of $314.22, *Id*. at 18;

and "legal staff working meals" of $485.69, *Id.* at 23; for a total of $3,048.02 should be

eliminated from the fee award because of a lack of billing judgment with respect to these

expenses.

The Kaye Scholer law firm's expense for "litigation support" is $191,176.95, [Dkt.

792-2, p. 32].  At the hearing, Plaintiffs' witnesses explained that these expenses were

incurred by the Kaye Scholer law firm for the computer services necessary to manage the voluminous document production in this case.  The undersigned is convinced that it was necessary to incur some expense to manage the data produced in discovery.  However, no real effort was made by Plaintiffs to demonstrate that the amount of $191,176.95 was reasonable.  The entries related to the "litigation support" expense cover 8 pages of a computer print-out, [Dkt. 792-2, pp. 24-33].  Throughout the entries there are numerous instances of double posting of charges and the removal of what appear to be duplicate charges which makes review of the expenses difficult.  *Id*. at pp. 25, 26.  A charge for "data storage and hosting" for July 2009 in the amount of $2442 appears to have been charged twice.  *Id*. at p. 30.  Defendants object to the vague designation of "for services rendered" for some of the entries.  *Id.* p. 30.  Plaintiff did not provide an explanation for that designation.  However, based on the context the undersigned has concluded that designation has been used as a substitute for the description of "data storage and hosting" for some months because there is not also a hosting charge for those months when the "for services rendered" designation is used.  The undersigned makes no recommendation for a reduction based on the "for services rendered" description.

The undersigned finds that, considering the volume of data production in this case, some expense was necessarily incurred to manage the data.  However, since Plaintiffs made no attempt to demonstrate the reasonableness of the expense, the undersigned finds that some reduction of that large expense item is in order.  The lack of a basis for

23

determining whether the amount of the expense is reasonable or unreasonable is entirely due to Plaintiffs' failure to meaningfully address Defendants' objection to the expense. The recommended reduction in the "litigation services" expense is admittedly somewhat arbitrary, but that too is the result of Plaintiffs' failure to demonstrate the reasonableness of the expense.

The undersigned recommends a twenty-five percent reduction in the Kaye Scholer "litigation expense" after deduction of the $4224 duplicative entry for the July 2009 hosting fee. Twenty-five percent was chosen as a significant enough reduction to account for the lack of evidence about the reasonableness of the expense, but not so great a reduction so as to be punitive. The undersigned therefore recommends that the fee request be reduced by $2442 for duplication of expenses and the remaining $188,734.95 be reduced by 25% or $47,183.74 for a reduction in this category of expense of $49,625.74.

The fee request contains an expense item of $209,959.75 for "temporary attorneys." [Dkt. 791-4, p. 2]. Defendants object to this expense item because Plaintiffs have offered no support for such an expense under §1988. At the hearing Defendants voiced further objection on the basis that there was no specific information provided about the work performed by the temporary attorneys or about their qualifications. Attorney Lowry testified that temporary attorneys were used to deal with a late e-mail production so the e-mail information could be used at upcoming depositions. She testified that the use of temporary

attorneys was a cost saving measure because the expense represents the actual cost of $55 per hour.

At $55 per hour, the temporary attorney expense represents over 3,800 hours of time over the 20 week period the expense was incurred, which is 190 hours per week, or 4.75 attorneys working 40 hours per week for 20 weeks.  That is an enormous expenditure of time for which there is no description of the work performed.  Certainly, the use of temporary attorneys at $55 per hour is a cost savings over the requested hourly attorney or paralegal rates.  However, since no time entries were submitted there is no way for the court to determine whether the time was reasonable for the tasks, or even what tasks were performed.  As with the Kaye Scholer "litigation expense," the undersigned is faced with the sense that some expense for the job of reviewing the e-mail production was necessarily incurred but with an insufficient explanation of the expense the undersigned cannot determine what is reasonable and fair to both parties.  The undersigned finds that, regardless of the hourly rate charged by the temporary attorneys, Plaintiffs have not demonstrated that the expense for over 3800 hours of largely unexplained time is reasonable.  The undersigned therefore recommends that the expense for temporary attorneys be reduced by 25 percent, which is a reduction of $52,490.

The total recommended reduction to the claimed expenses discussed in this section is $257,405.

**XI.**
**Inclusion of Taxable Costs in Fee Application**

Defendants state that Plaintiffs' request for expenses includes numerous items that "possibly could have qualified as taxable costs under 28 U.S.C. § 1920." [Dkt. 834, p. 31]. Defendants argue that $193,267.60 should be eliminated from the award for those expenses that could have been sought by way of a bill of costs under 28 U.S.C. § 1920.

The Local Rules of this District unequivocally require a prevailing party who seeks to recover costs under 28 U.S.C. § 1920 to file a bill of costs on the form provided by the Court Clerk and to support the bill of costs with a brief.  The Rule also specifies that the bill of costs and brief "shall be separate documents from the motion for legal fees and its brief."  LCvR54.1.  The Local Rule addressing motions for attorney fees also specifies that the bill of costs shall be a separate document.  LCvR54.2(a).  Plaintiffs were fully aware of both of these rules as they are cited in all three of Plaintiffs' motions for extension of time to file their "Motion for Attorney Fees and Bill of Costs."  [Dkt. 780, 783, 786].

Defendants raised LCvR 54.1 and the Plaintiffs' failure to adhere to it in their brief opposing Plaintiffs' motion for fees.  [Dkt. 834, pp. 31-32].  Plaintiffs wholly failed to address this aspect of Defendants' objection to their motion in their reply brief.  As a result, what stands before the court is Defendants' unopposed objection to an award of costs under 28 U.S.C. § 1920 within the application for fees and expenses and Defendants' unopposed determination of what aspects of Plaintiffs' application for fees and expenses

should have been brought by way of a bill of costs.  The undersigned has not endeavored to determine whether there is any authority for considering items of costs in a fee application under §1988.  Instead, the undersigned finds that the Plaintiffs have not carried their burden of demonstrating that the $193,267.60 for reporters/transcripts, printing and photocopies, filing and court fees, electronic court access, and blowbacks[8] is reasonable, necessary, or properly included in an application for fees under §1988.  Therefore the undersigned recommends that $193,267.60 be eliminated from the fee award as statutory costs which were required to be submitted by way of a bill of costs in accordance with LCvR 54.1 and LCvR 54.2.[9]

---

[8]  The term "blowbacks" is apparently one with which the parties are familiar, the undersigned is not, and nothing within any of the papers filed defines this term.

[9]  *See Hauenstein v State of Oklahoma*, 2011 WL 3819388 (WD Okla., August 26, 2011)(application for costs denied because of failure to comply with local rule requiring a bill of costs to be submitted separately from attorney fee request under §1988).

**CONCLUSION**

The undersigned RECOMMENDS the entry of award to Plaintiffs of attorney fees

and expenses in the total amount of $7,031,928[10] broken down as follows:

> – attorney fee of $5,596,010;
> – travel time of $139,500;
> – paralegal and intern time of $572,260; and
> – reimbursable expenses $ 724,158.[11]

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file

specific written objections to this report and recommendation.  Such specific written

objections must be filed with the Clerk of the District Court for the Northern District of

Oklahoma on or before January 2, 2013.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district

judge to:

> determine de novo any part of the magistrate judge's
> disposition that has been properly objected to.  The district
> judge may accept, reject, or modify the recommended
> disposition; receive further evidence; or return the matter to the
> magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

---

[10]  Overall, the recommended fee award is in line with the fee awarded in a similar case prosecuted by Children's Rights in Georgia.  *Kenny A. v. Purdue*, 454 F.Supp.2d 1260, 1286, 1296 (N.D. Ga. 2006)(lodestar of $6,012,803 awarded for 29,908 hours at rates ranging from $215 to $492 per hour, plus expenses of $739,959 for a total award of $7,171,434, exclusive of enhancement which was reversed by the Supreme Court, *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010)).  Further, the number of hours Plaintiffs sought are comparable to those expended in this case by Defendants.  [Dkt. 790, p. 25].

[11]  The recommended reductions of $450,672 to the $1,174,831 in expenses and costs are broken down, as follows:  costs recoverable under 28 U.S.C. §1920 $193,267.60; expert deposition preparation $65,571.18; litigation support $16450.13; conference meals $546.69; working meals $6,576.22; other inappropriate meal requests $3,000; other transportation $50,121.87; travel agent fees $2100; cancelled flights $7,050; Amtrak charges $825; Kaye Scholer inappropriate charges for travel and meals $3,048.02; Kaye Scholer litigation expense $49,625.74; and temporary attorneys $ 52,490.

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 19th day of December, 2012.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE