## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| D.G., by Next Friend G. Gail Strickland et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-074-GKF-FHM |
| | ) | |
| BRAD YARBROUGH, Chairman of the | ) | |
| Oklahoma Commission for Human Services, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court is the Report and Recommendation of Magistrate Judge Frank H. McCarthy [Dkt. #846] on plaintiffs' Motion for Award of Class Counsel Fees and Expenses [Dkt. #790].  Magistrate Judge McCarthy recommended plaintiffs be awarded attorney fees and expenses totaling $7,031,928.  Defendants have raised four objections to the Magistrate Judge's Report and Recommendation. [Dkt. #850].

### I. Standard of Review

The district court must conduct a *de novo* review of the Magistrate Judge's Report and Recommendation.  28 U.S.C. § 636(b)(1); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir.1996) ("De novo review is required after a party makes timely written objections to a magistrate's report.  The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations.").  The court may

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## II. Procedural Background

This class action was filed pursuant to 42 U.S.C. § 1983 on behalf of all foster children in the legal custody of the Oklahoma Department of Human Services ("DHS") against members of the Oklahoma Commission for Human Services and the director of DHS.  Plaintiff children sued defendants in their official capacities, alleging policies and procedures adopted by defendants have subjected foster children to significant, ongoing harm and risk of harm, deprivation of the chance for safe and stable childhoods and violation of their constitutional and statutory rights.

Plaintiffs asserted claims for violation of their substantive due process right under the Fourteenth Amendment to be free from harm and risk of harm; violation of their liberty and privacy rights guaranteed by the First, Ninth and Fourteenth Amendments; and violation of their procedural due process rights under the Fifth and Fourteenth Amendments based on deprivation of state law entitlements. [Dkt. #2]. Additionally, plaintiffs asserted claims for violation of the Federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 621, *et seq.,* and breach of federal contractual obligations to third party beneficiaries.  [*Id.*]. The court granted defendants' motion to dismiss the last two claims.  [Dkt. #220].

On May 5, 2009, the court, pursuant to Fed. R. Civ. P. 23, certified a class consisting of all children who are or will be in the legal custody of DHS (1) due to a report or suspicion of abuse or neglect; or (2) who are or will be adjudicated deprived due to abuse or neglect.  [Dkt. #272 at 17].

On December 1, 2011, the court granted defendants' motion for summary judgment on plaintiffs' claims for violation of liberty and privacy rights and violation of their procedural due

process rights.  [Dkt. #741].  The court denied defendants' motion for summary judgment with respect to plaintiffs' claim for violation of their substantive due process rights.  [*Id.*].

On January 4, 2012, the case settled.  [Dkt. #768].  The Compromise and Settlement Agreement ("Settlement Agreement") executed by the parties contained the following provisions:

> 1.2    **Class Counsel** shall mean Angela R. Vicari, Frederic Dorwart, Ira P. Lustbader, John S. Cahalan, Marcia R. Lowry, Paul DeMuro, Phillip A. Geraci, R. Thomas Seymour, Scott A. Graham, William Kapell, Miriam F. Ingber, Patrick S. Almonrode, Jodi K. Miller, Laurence D. Borten, Philip G. Barber, and Sarah T. Russo.
>
> 1.3    **Class Counsel Fees and Expenses** shall mean reasonable fees and expenses of Class Counsel in an amount to be determined by the Court, provided the services and expenses of Frederic Dorwart Lawyers have been and will be provided pro bono for the benefit of the Plaintiff Class. The Court shall retain jurisdiction to make this determination.  The Named Plaintiffs and Next Friends shall not seek or be awarded compensation in return for their role in the Class Action Litigation.  Settling Defendant stipulates that Class Counsel  is entitled to Class Counsel Fees and Expenses but reserves the right to dispute the amount of Class Counsel Fees and Expenses.
>  [Dkt. #770-1].

[Dkt. #770-1 at 3].

In the pending motion, plaintiffs seek an award of reasonable attorney fees under 42 U.S.C. § 1988 and ¶ 1.3 of the Settlement Agreement.  They requested an award of $8,345,588 for 36,188 billable hours[1] and $1,174,831 in reimbursable expenses, for a total of $9,520,419. Defendants opposed the motion, arguing that neither the hourly rates nor the number of hours were reasonable, and asserting that the court should either disallow an award entirely or limit the amount of the award to between $2.6 and $3.7 million.

---

[1] Total plaintiffs' attorney hours were 39,822 (excluding 2,246 hours of the Dorwart firm's time and 4,007 hours of Kaye Scholer's time (both pro bono), and 3,817 hours spent by "temporary attorneys," for which plaintiffs seek recovery as an expense). [Dkt. #790 at 8]. Plaintiffs, in their exercise of billing judgment, excluded 3,634 hours of time expended by Children's Rights attorneys.  [Dkt. #791, Marcia Lowry Dec., ¶ 12].  Defendants' counsel (Riggs, Abney and Crowe & Dunlevy) expended 38,850 hours on the case, exclusive of work by DHS staff and in-house counsel.  [Dkt. #790 at 25].

The attorney fee motion was referred to Magistrate Judge McCarthy, who issued a Report and Recommendation.  Defendants have filed four objections.

### III. Magistrate Judge's Recommendation

The Magistrate Judge recommended that:

1.  The court reject defendants' argument that plaintiffs may only recover fees and expenses for the attorneys specifically named as "Class Counsel" in ¶ 1.2 of the Settlement Agreement. [Dkt. #846 at 3-4].

2.  The court reject defendants' argument that the fee award should be reduced because only one of the five claims asserted in the complaint survived dismissal and/or summary judgment. [*Id.* at 5].

3.  The court reject defendants' argument that the overall fee award be reduced based on alleged unethical conduct by plaintiffs' attorneys in communicating with Steven Dow, a member of the Oklahoma Commission for Human Services. [*Id.* at 5-6].

4.  Plaintiffs' attorneys be paid for travel time at a rate of $50 per hour and reimbursed for reasonable travel expenses. [*Id.* at 8].

5.  Local hourly rates of up to $300 be applied to all of plaintiffs' attorneys, except that a rate of $450 per hour should apply to Marcia R. Lowry; and the court accept defendants' expert report on the rates for the individual attorneys. [*Id.* at 9-11].

6.  Local hourly rates of $60-$75 per hour be applied to paralegal and intern time, for an average of $70 per hour, as recommended by defendants' expert. [*Id.* at 12].

7.  The court reduce plaintiffs' total lodestar fee[2] of $6,017,215 by 7.5 percent (as suggested by plaintiffs' expert) to account for inadequate descriptions of tasks in billing entries, duplication of effort and lack of billing judgment. [*Id.* at 15-16].

8.  A total 209 of the 9,047 hours of paralegal time be eliminated because it represented work that was secretarial in nature and not separately billable to a client; and the remaining 8,838 hours be reduced by 7.5 percent based on lack of billing judgment.  [*Id.* at 15-16].

---

[2] The lodestar is determined by multiplying the hours reasonably expended by plaintiffs' counsel on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1249 (10th Cir. 1998).

9. The court award attorney fees totaling $5,596,010, paralegal/intern fees totaling $572,260; and travel fees totaling $139,500. [*Id.* at 16-17].

10. Plaintiffs' request for reimbursement of expenses totaling $1,174,831 be reduced by $450,672, with reductions broken down as follows:

- costs recoverable under 28 U.S.C. § 1920 (requiring filing of a bill of costs)--$193,267.60;
- expert deposition preparation--$65,571.18[3] (should be $68,571.18)
- litigation support--$16,450.13;
- conference meals--$546.69;
- working meals--$6,576.22;
- other inappropriate meal requests--$3,000.00;
- other transportation--$50,121.87;
- travel agent fees--$2,100.00
- cancelled flights--$7,050.00
- Amtrak charges--$825.00
- Kaye Scholer law firm inappropriate charges for travel and meals--$3,048.02;
- Kaye Scholer law firm litigation expense--$49,625.74;
- Temporary attorneys--$52,490.00. [*Id.* at 28].

11. Overall, the Magistrate Judge recommended an award to plaintiffs of attorney fees and expenses in the total amount of $7,031,928, broken down as follows:

- Attorney fees of $5,596,010;
- Travel time of $139,500;
- Paralegal and intern time of $572,260; and
- Reimbursable expenses of $724,158  [*Id.*].

### IV. Defendants' Objections

Defendants object to the Report and Recommendation on the following bases:  (A) the Magistrate Judge erred as a matter of law in recommending an award of fees for attorneys not identified in the Settlement Agreement as "Class Counsel;" (B) the Magistrate Judge erred as a matter of law and ignored the clear weight of evidence in failing to recommend a reduction in fees for plaintiffs' attorneys' alleged inappropriate contact with Steven Dow; (C) the

---

[3] The Magistrate Judge recommended excluding $68,571.18 in expert deposition preparations, but deducted only $65,571.18. [Dkt. #846 at 19-20].  The entire $68,571.18 is excluded in the court's calculations.

recommended reduction of 7.5 percent to plaintiffs' requested fee award is insufficient;  and (D) plaintiffs' claimed expenses for temporary attorneys and Kaye Scholer's litigation support should be disallowed in their entirety.

## V. Analysis

### A. Award of Fees for Work by Attorneys Not Listed as "Class Counsel"

Defendants argue that under ¶ 1.2 and ¶ 1.3 of the Settlement Agreement, plaintiffs waived their right to seek legal fees under 42 U.S.C. § 1988 for work by attorneys not listed as "Class Counsel" in ¶ 1.2.

The Supreme Court has held that a prevailing plaintiff in a civil rights action "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1200 (10th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  The presumption in favor of attorneys' fees may be overcome by waiver of fees by the prevailing plaintiff.  *Id.*  However, "[a]bsent express language in the settlement agreement waiving the right to recover attorney fees, the intent of the parties governs." *Id.*

Waiver is "the voluntary and intentional relinquishment of a known right."  *Barringer v. Baptist Healthcare of Oklahoma*, 22 P.3d 695, 700-01 (Okla. 2010) (quoting *Faulkenberry v. Kansas City Southern Ry. Co.* 602 P.2d 203, 206-07 (Okla. 1979).  "The doctrine is essentially a matter of intention, focusing on the intent of the party against whom waiver is asserted."  *Id.* Waiver can be accomplished either expressly or implicitly, but an implied waiver requires "a clear, unequivocal and decisive manifestation of the party's relinquishment of the right."  *Id.* "No one can be bound by a waiver of one's rights unless it was made with full knowledge of the rights intended to be waived." *Faulkenberry*, 602 P.2d at 207.

6

Paragraphs 1.2 and 1.3 do not expressly waive plaintiffs' right to seek recovery of attorney fees under 42 U.S.C. § 1988 for non-listed attorneys.  As the Magistrate Judge correctly noted, Paragraphs 1.2 and 1.3 neither mention § 1988, nor waive the right to seek statutory fees for non-listed attorneys.  In Paragraph 1.3, the "Settling Defendant," the Oklahoma Commission for Human Services, stipulates that *Class Counsel are entitled* to fees and expenses; the language of the paragraph in no way limits plaintiffs' right to seek fees under § 1988 for non-listed attorneys.

Nor, in this court's view, can Paragraphs 1.2 and 1.3 be fairly read to constitute an implied waiver.  The language in the paragraphs simply falls short of "a clear, unequivocal and decisive manifestation of [plaintiffs'] relinquishment of the right" [to seek fees under § 1988 for non-listed attorneys]. *Barringer,* 22 P.3d at 701.

The court concludes that plaintiffs did not waive their right to seek attorney fees under 42 U.S.C. § 1988 for attorneys not listed as "Class Counsel" in Paragraph 1.2 of the Settlement Agreement.

### B. Reduction for Communications with Steven Dow and DHS Personnel

Defendants seek a significant reduction in the fee award due to plaintiffs' counsels' unauthorized contact with represented defendants.  Specifically, they contend plaintiffs' counsel violated Oklahoma Rule of Professional Conduct 4.2 by communicating with DHS Commissioner Steven Dow and DHS personnel without the consent of DHS counsel or a court order authorizing such communication.

Time records produced by attorneys for Children's Rights contained numerous entries concerning communications between plaintiffs' attorneys and confidential sources or informants.

7

In connection with the attorney fee motion, defendants sought to compel production of documents disclosing the identities of the confidential sources.  [Dkt. #804].  The Magistrate Judge conducted an *in camera* review of the list of confidential sources before ruling on the motion to compel. [Dkt. #812].

In his Report and Recommendation on the attorney fee motion, the Magistrate Judge observed that Dow was not on the list of names of "confidential sources" and "with the exception of one individual identified as a supervisor, the sources were case workers or other front line employees."  [Dkt. #846 at 6].  Further, with respect to communications by Dorwart and/or Lowry with Dow, the court found "the evidence did not establish that there were any unauthorized discussions between Plaintiffs' attorneys and Mr. Dow regarding this litigation" and "[t]here is, therefore, no basis for a reduction the fee award for unethical conduct with respect to Mr. Dow, or otherwise."  [*Id.*].

With respect to communications with confidential sources, defendants assert the Magistrate Judge's review of plaintiffs' *in camera* submission was "insufficient to fully address the Rule 4.2 Issue," and speculate plaintiffs did not submit all information the Magistrate  Judge ordered them to produce for *in camera* review.  [Dkt. #850 at 22].  They state, "In other words, the R&R reflects that Plaintiffs' counsel has not submitted descriptions of Plaintiffs' counsel's contact with Mr. Dow or with any other DHS-affiliated individual, unless that individual *also* happened to be named as a 'source' by Children's Rights on a time record filed with the Court." [*Id.* at 23].

The court declines to second guess the adequacy of the list submitted to the Magistrate Judge for *in camera* review.  The Magistrate Judge reviewed the list in connection with the motion to compel.  He determined none of the people identified on the list were of a level to raise

Rule 4.2 issues.  Plaintiffs turned over the time records indicating Dorwart's contacts with Dow, and both Dorwart and Lowry testified about the nature and extent of their communications with Dow.

Dow was appointed as a member of the Human Services Commission on November 25, 2009.  [Dkt. #850, Ex. 5].  Pursuant to Fed. R. Civ. P. 25(d), he was automatically substituted as a party in this lawsuit.  Time records from the Dorwart firm confirm telephone calls between Dorwart and Dow on December 16, 2009, and March 2, 2010.  [Dkt. #850, Ex. 7].  Additionally, a March 8, 2010, entry stated, in pertinent part, "work on care package to Mr. Dow."  [*Id.*].  The time records indicate that subsequently, on November 19-21, 2010, numerous emails and telephone calls occurred among Dorwart, Dow and Don Bingham, counsel for defendants.  [*Id.*].[4]

Dorwart testified at the hearing that he and Dow are friends and otherwise professionally associated and speak frequently.  [Dkt. #843, TR at 80:24-25].  He testified that in the December 16, 2009, Dow told him he had long expressed a desire to go on the commission and that DHS Director Howard Hendrick opposed Dow coming on the commission.  [*Id.,* TR at 81:4-23].  The March 8, 2010 care package for Dow, according to Dorwart, included a number of the filed pleadings in this case and a copy of the consent decree entered of record in the Tennessee case.  [*Id.,* TR at 85:3-11].  Dorwart testified he had talked to Dow sometime before and Dow expressed his desire to see the pleadings in the case so that when he went on the commission he would know what was going on.  [*Id.,* TR at 85:12-17].  Dorwart testified that to his knowledge, Dow was not serving as a commissioner at the time he sent him the care package.  [*Id.,* TR at

---

[4] The entry for 12/16/09 states, in pertinent part:  "Teleconference with Steven Dow regarding appointment to DHS Commission." [Dkt. #850, Ex. 7 at pp. 32-33].  The entry for 3/2/10 states, in pertinent part:  "teleconference with Steven Dow."  [*Id.* at 34]. An entry on 11/19/10 states "Multiple emails to Messrs. Dow and Bingham [DHS counsel] concerning scheduling settlement discussion." [*Id.* at 36] The entry for 11/20/10 states "Teleconference with and emails x3 to Mr. Dow concerning settlement discussions." [*Id.*]. The entry for 11/21/10 states "Teleconference with Mr. Dow and emails x4 to Messrs. Dow and Bingham concerning settlement." [*Id.*]

86:12-14].[5]  In any event, Dorwart's testimony that he had no substantive discussions with Dow

regarding this lawsuit is uncontroverted.

Lowry testified she had no substantive communications with Dow.  [*Id.,* TR at 209:19-

25].  Neither Dorwart nor anyone else communicated to her any discussions they had with Dow.

[*Id.,* TR at 210:1-6].

After consideration of the arguments of counsel, together with the testimony and

evidence presented, this court concludes that any attorney fee award need not be reduced based

on counsels' contact with Mr. Dow and DHS personnel.


### C. Lodestar Reduction

In the hearing before the Magistrate Judge, defendants argued for a 30 to 50 percent

reduction in plaintiffs' requested fees, and experts for both sides agreed some reduction is

appropriate.  Defendants' expert recommended a reduction of 30 percent. [Dkt. #844, TR at

422:19-20].  Plaintiffs' expert testified that if he were in the shoes of the court, he would reduce

the Children's Rights attorney fees by 7.5 percent "because of potential duplication of effort or

items that were excessive."  [Dkt. #844, TR at 288:1-25].

The Magistrate Judge recognized serious issues with plaintiffs' descriptions of tasks in

billing entries, duplication of effort, and a lack of billing judgment.  In particular, he noted that—

according to defendants—the Children's Rights attorneys, in more than 840 time entries

representing $198,414.75 in fees, allocated time to communications with unidentified "sources,"

and he concluded the entries were too vague to evaluate whether the time spent was reasonable.

---

[5] However, Dow had been appointed November 5, 2009, and attended a commission meeting on February 23, 2010.
[Dkt. #850, Ex. 6, Minutes of February 23, 2010 Executive Session of the Oklahoma Commission for Human
Service meeting].

[Dkt. #846 at 13].   Further, he observed that defendants had identified over 1,900 billing entries for attorney Kapell that contain the description "electronic mail" and little other detail about the substance of the work performed, and $36,066.34 in attorney time which defendants argued is not recoverable as it was devoted to non-substantive tasks such as organizing and training attorneys.  [*Id.*].  The Magistrate Judge adopted and recommended plaintiffs' experts' suggestion—a reduction of 7.5 percent.  [Dkt. #846 at 15].

Defendants argue the recommended 7.5 percent reduction is "meager" and "considerably below the range of reductions" in other cases. [Dkt. #850 at 9, 11].  They contend the plaintiffs' attorneys' lodestar should be reduced by at least 25 percent.  [*Id.* at 10].[6]  Defendants also contend the requested fees should be reduced because plaintiffs ultimately prevailed on only one of their five claims.

Although the court may reduce a lodestar calculation on the grounds that plaintiffs have achieved only partial success, many civil rights cases involve multiple claims "based on a common core of facts . . . or related legal theories." *Robinson v. City of Edmond,* 160 F.3d 1275, 1283 (10th Cir. 1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). The Tenth Circuit has held "that when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award." *Robinson,* 160 F.3d at 1283.

The court concurs with the Magistrate Judge's conclusion that the facts supporting the successful claim were intertwined with the unsuccessful ones.  Therefore, it rejects defendants' argument that a reduction for plaintiffs' unsuccessful claims is appropriate.

---

[6] Further, defendants correctly assert there is an arithmetic error in the calculation of the reduction at pages 16-17 of the Report and Recommendation, and that a 7.5 percent reduction in the subtotal figure of $6,017,215 amounts to a reduction of $451,291 (rounded to the nearest dollar) instead of $421,205, as stated on pages 17-18 of the Report and Recommendation.

This court also concurs with the Magistrate Judge that a reduction in the overall fee award is justified by the lack of billing judgment found in the fee request.   Plaintiffs bear the burden to prove the reasonableness of "each dollar, each hour, above zero" in their fee request. *Mars v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir. 1986).   Their fee application contains numerous deficiencies which undermine their request.  After an independent review of the billing statements, the exhibits, and the testimony presented, this court concludes that a 20 percent reduction of the base fee of $6,017,215 is reasonable and appropriate.[7]  This percentage was determined by considering (1) the lack of billing judgment referenced by the Magistrate Judge, including billing entries that do not detail the work performed, and attorney time devoted to organizing and training attorneys; (2) the excessive fees Children's Rights sought for class certification, insofar as the class was provisionally certified without much difficulty, and considering the significant pro bono assistance plaintiffs received on the issue from Kaye Scholar;[8] (3) the inefficiencies incumbent with high turnover rates of attorneys and staff at Children's Rights;[9] (4) the absence of monthly or periodic billing reviews at Children's Rights, resulting in vague, insufficiently detailed, and excessive billing; (5) duplicative billing entries by multiple attorneys for the same task; and (6) plaintiffs' failure to provide documentation or description of the 3,634 hours they wrote off,  making it difficult to evaluate the adequacy of their exercise of billing judgment.  As a result, the plaintiffs are awarded a reasonable attorney fee in the amount of $4,813,772.  Similarly, the court concludes total fees for paralegal/intern

---

[7] This reduction is consistent with the lodestar reduction in *Kenny A. v. Perdue,* 454 F. Supp.2d 1260, 1286 (N.D. Ga. 2006) (ordering 15% reduction in number of non-travel related hours claimed by plaintiffs' counsel).

[8] The Kaye Scholer firm reported $236,000 in billable time on the class certification issue.  [Dkt. #844, TR at 426:14-2].

[9] Defendants' expert James Sturdivant, testified, based on his review of plaintiffs' records that only two Children's Rights attorneys were at the firm for the entirety of the lawsuit; six came after the case was filed and remained to the end; and 37 other timekeepers came and went during the pendency of the case. [Dkt. #844, TR at 424:14-22].

time should be reduced by 20 percent.  The requested fee of $618,660 is therefore reduced to an award of $494,928 for paralegal and intern time.

### D. Expenses for Kaye Scholar's Litigation Support and for "Temp Attorneys"

While only those items listed under 28 U.S.C. § 1920 may be awarded as costs, other out-of-pocket expenses incurred during litigation may be awarded as attorney fees under 42 U.S.C. § 1988 if (1) the expenses are not absorbed as part of the law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable.  *Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir. 1995).

### 1. Data Storage Costs

Plaintiffs sought reimbursement of a total of $262,120 for out-of-pocket expenses of the Kaye Scholer law firm.  Phillip Geraci, the Kaye Scholer partner who supervised the firm's work on this case, declared that the firm incurred the expenses in connection with this action.  [Dkt. #792, Phillip A. Geraci Dec., ¶ 4].   Included in the out-of-pocket expenses was $191,176.95 for "litigation support." Geraci, in his declaration, stated:

> The largest category of reimbursable expenses incurred by Kaye Scholer in connection with this litigation was for litigation support, which consisted of payments to Plaintiffs' vendor for computerized data loading, storing and hosting charges with respect to the millions of pages of records obtained by Plaintiffs during the discovery phase of the case.

[*Id.,* Geraci Dec., ¶ 7].  Exhibit B to the Geraci Declaration is an itemized list of individual expenses.  It includes eight pages listing payments to three vendors, Iris Data Services, LLC, Everest Technologies Co., LLC, and TechLaw Solutions, Inc. for "Litigation Support."

At the hearing on plaintiffs' fee motion, attorney Lowry testified the Kaye Scholer firm provided litigation support, "which was…a hosting system for the data and for the electronic

data that we had collected.  And they maintained that, and we loaded our data onto that hosting system."  [Dkt. #843, TR at 163:18-22].  Further, she stated:

> But I do know personally that the data that we were collecting through electronic discovery was going up on a system, a computer system that Kaye Scholer was paying for.  And that was obviously an essential part of the case, to be able to handle the electronic discovery.

[*Id.,* TR at 168:5-11].

The Magistrate Judge concluded that, considering the volume of the data production in this case, some expense was necessarily incurred to manage data [Dkt. #846 at 23].  However, he stated:

> [S]ince Plaintiffs made no attempt to demonstrate the reasonableness of the expense, the undersigned finds that some reduction of that large expense item is in order. The lack of a basis for determining whether the amount of the expense is reasonable or unreasonable is entirely due to Plaintiffs' failure to meaningfully address Defendants' objection to the expense.  The recommended reduction in the "litigation services" expense is admittedly somewhat arbitrary, but that too is the result of Plaintiffs' failure to demonstrate the reasonableness of the expense.

[Dkt. # 846 at 23-24].

The Magistrate Judge noted that a charge for "data storage and hosting" for July 2009 in the amount of $2,422 appears to have been charged twice. [*Id.* at 23].  Additionally, some of the entries are vaguely described as being "for services rendered."  [Doc. 792-2, Ex. B at pp. 30-31], and throughout the entries, there are numerous instances of what appear to be double posting of charges and subsequent removal of charges. The Magistrate Judge did not recommend a reduction for the "services rendered" billings, which he concluded appeared to be data storage and hosting charges.  [Dkt. #846 at 23].  However, he recommended a reduction of $2,442 for duplication of the July 2009 hosting fee.  [*Id.* at 24].  Further, because plaintiffs made no effort to demonstrate the reasonableness of the overall expense for "litigation support," the Magistrate

Judge recommended a 25 percent reduction, or $47,183.74, for a total reduction in this category of expense of $49,625.74. [*Id.*].

In their objection, defendants argue the $191,176.95 for "litigation support" should be denied in its entirety because "[p]laintiffs have not sufficiently linked a payment from Defendants of nearly $200,000 to why or how this expense was necessary to Plaintiffs' case." [Dtk. #850 at 30].

The court rejects defendants' argument.  As the Magistrate Judge observed, cases involving voluminous electronic document production necessarily generate such costs.  Plaintiffs have sufficiently established the costs were out-of-pocket expenses paid by Kaye Scholer to vendors for electronic document hosting and management.  The Magistrate Judge's proposed 25 percent reduction adequately accounts for the deficiencies in documentation of the costs.

### 2. Temporary Attorneys

Plaintiffs sought recovery of out-of-pocket expenses totaling $209,959.75 (representing over 3,800 hours) for temporary attorneys over a term of 20 weeks to assist in the review of nearly one million emails produced by defendants.  [Dkt. #791, Marcia Lowry Declaration, ¶ 17; Dkt. #791-4 at 2, Ex. D, p. 1].  Lowry testified the emails were produced late in the case, and given the size and timing of the production, plaintiffs had no choice but to hire temporary attorneys in order to complete the review of the emails in time to use them for depositions and other discovery.  [Dkt. #843, TR at 172:18-173:3].  Plaintiffs billed the attorneys at the actual cost from the agency--$55 per hour.  [*Id.,* TR at 173:3-6].  Lowry testified that if CR attorneys had reviewed the emails, their rates would have been "well above" the $55 per hour rate charged by the agency.  [*Id.,* TR at 173:114-20].

The Magistrate Judge agreed the use of temporary attorneys was a cost savings over the requested hourly rates for attorneys and paralegals.  However, because no time entries for the temporary attorneys' work were submitted, he concluded "there is no way for the court to determine whether the time was reasonable for the tasks, or even what tasks were performed." [Dkt. #846 at 25].  He recommended that the expense for temporary attorneys be reduced by 25 percent ($52,490).

Defendants argue that the temporary attorney costs should be entirely disallowed because attorney fees are not an "expense" under § 1988, no matter which attorneys are performing the work.  Further, they assert plaintiffs' documentation fails to establish the charges were reasonable.  This court agrees.  Rather than properly documenting and describing the time expended by these temporary attorneys, Children's Rights improperly seeks reimbursement for the attorneys' time as an "expense."  Moreover, as the Magistrate Judge recognized, the 3,800 attorney hours allegedly spent by the temporary attorneys represents "an enormous expenditure of time for which there is no description of the work performed."  Therefore, the court concludes the claim for attorney fees characterized as "expenses" must be disallowed.

## VI. Conclusion

For the foregoing reasons, the Magistrate Judge's Report and Recommendation [Dkt. #846] is accepted in part and rejected in part, as set forth above.  Plaintiffs' Motion for Award of Class Counsel Fees and Expenses [Dkt. #790] is granted.  Plaintiffs are awarded attorney fees and expenses in the total amount of $6,011,888.80, broken down as follows:

- attorney fees in the amount of $4,813,772;

- travel time of $139,500;

- paralegal and intern time of $494,928; and

- reimbursable expenses of $563,688.80.

IT IS SO ORDERED this 31st day of March, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

17